**JAMIE EPSTEIN**, ESQ. - BAR ID. 008081990
17 Fleetwood Drive, Hamilton, New Jersey 08690
1818 Cuthbert Rd, Auite 310, Cherry Hill, NJ. 08034
Telephone:856.979.9925, EMAIL: JE@JamieEpsteinLaw.com
Attorney for Plaintiffs

| | |
|---|---|
| F.V. & M.V., individually and on behalf of B.V.[1], | **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY CAMDEN VICINAGE DOCKET NO. 1:21-CV-18096-KMW-SAK** |
| Plaintiffs, v. | |
| CHERRY HILL TOWNSHIP BOARD OF EDUCATION | |
| Defendants | **SECOND AMENDED COMPLAINT** |

The V.s, by way of Complaint say:

## PARTIES

1.      The V.s are B.V., an infant, her father, FV and her mother, MV,  ("Vs").

2.      B.V. was born in October, 2014 and according to her Individual Education Plan (IEP) is eligible for special education and related services pursuant to the Individuals with Disabilities Education Act (IDEA) under the category of Communications Impaired because she suffers from numerous disabilities.

3.      The V.s are domiciled within the geographic boundaries of the Township of Cherry Hill, County of Camden and State of New Jersey.

4.      At all relevant times, Defendant, Cherry Hill Public School District,

---

1  The V.s are using fictitious initials to protect the plaintiff/student's right to confidentiality of the plaintiff/student's records under state and federal law which are the subject of civil action. The *Federal Family Educational Rights and Privacy Act of 1974* (FERPA), 20 U.S.C.S. § 1232g, *New Jersey Pupil Records Act*, N.J.S.A. § 18A:36-19, *L.R. v. Camden City Pub. Sch. Dist.*, 452 N.J. Super. 56, 86 (NJAD 2017) ("to safeguard the reasonable privacy interests of parents and students against the opposing interests of third parties who may seek access to their student records ")

(hereinafter referred to as BOE), is located at 45 Ranoldo Terrace, Cherry Hill, New Jersey 08034., is a "Local Educational Authority" as defined by 20 U.S.C. §1401(a) and responsible for ensuring compliance with all federal and state mandates applicable to school aged students, like B.V., residing in the Township of Cherry Hill, County of Camden and State of New Jersey.

## JURISDICTION AND VENUE

5.     Jurisdiction is proper because the BOE  has its principal place of business within Camden County, New Jersey.

6.     Venue is properly laid in Camden County. R. 4:3-2(a).

## FACTS

7.     B.V is a disabled minor who was entitled to receive a free and appropriate public education (FAPE) in the Least Restrictive Environment (LRE) from the BOE under the IDEA.

8.     On 5/9/20, the V.s filed an administrative complaint (hereinafter referred to as BV1) with the State of New Jersey against the BOE for their failure to offer B.V. a FAPE in the LRE for the 2020-21 school year, in part, including, but not limited to, unnecessarily segregating B.V. away from her non-disabled peers.

9.     The V.s complaint was assigned case number EDS 06354-20.

10.    On 7/9/20, the V.s filed a Request for Emergency Relief claiming the BOE failed to comply with B.V.'s stay-put IEP that called for speech twice a week during the

extended school year period.

11.     On 7/16/20, the State of New Jersey issued a Final Order on the Request for Emergency Relief in the Vs favor. (Pa1-6)

12.     On 6/17/21, the State of New Jersey issued a Final Order on the 5/9/20 Petition dismissing the Vs claims incorrectly finding Defendants provided BV a free and appropriate education in the least restrictive environment. (Pa6-25)

13.     On 1/12/21, the Vs filed an  administrative complaint (hereinafter referred to as BV2) with the State of New Jersey against the BOE for their failure to offer B.V. a FAPE in the LRE for the 2018-19, 2019-20 school years and 2020-21 school year, in part, including, but not limited to, unnecessarily segregating B.V. away from her non-disabled peers.

14.     The BV2 1/12/21 administrative action was assigned case number EDS 01556-21.

15.     On 5/13/21, the State of New Jersey issued a Final Order, in part, dismissing claims as to the 2018-19 and 2019-20 school years. (Pa26-30)

16.     On 4/6/22, the State of New Jersey issued a Final Order, dismissing  the Vs remaining claims incorrectly finding Defendants provided BV a free and appropriate education in the least restrictive environment. . (Pa31-44)

3

## COUNT 1.  INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA)

17.    The Vs hereby repeat and incorporate by reference the proceeding paragraphs of this Verified Complaint.

18.    The Vs are prevailing parties on the 7/16/20 Final Order.

19.    The Vs are aggrieved by and appeal the 6/17/21 Final Order on the 5/9/20 Petition under IDEA and the interlocutory orders.  20 U.S.C. §1415(i)(2)

20.    The Vs are aggrieved by and appeal the 5/13/21 Partial Final Order and 4/6/22 Final Order on the 5/9/20 Petition under IDEA and the interlocutory orders.  20 U.S.C. §1415(i)(2)

WHEREFORE, the Vs demand judgment:

A.    Reversing the 6/17/21, 5/13/21 and 4/6/22 Orders and their interlocutory orders; and

B.    Awarding all appropriate relief; and

C.    Finding the Vs are prevailing party in the administrative actions and in this civil action.

D.    Awarding the Vs reasonable attorney's fees and costs against the BOE;

## COUNT 2.  NEW JERSEY LAW AGAINST DISCRIMINATION (NJLAD)

21.    The V.s hereby repeat and incorporate by reference the proceeding paragraphs of this Verified Complaint.

22.     The New Jersey Law Against Discrimination (NJLAD) protects persons with disabilities, like B.V., from discrimination based on her protected class. *N.J.S.A.* 10:5-4.

23.     Under NJLAD, the school district operated by the BOE is considered "a place of public accommodation". *N.J.S.A.* 10:5-5(l).

24.     B.V. is a handicapped person. *N.J.S.A.* 10:5-5(q).

25.     The BOE violated B.V.'s rights under the NJLAD by "refusing, withholding from or denying B.V., either directly or indirectly, on account of that person's disability or perceived disability, access to any accommodations, advantages, facilities or privileges of a place of public accommodation … and to discriminate against a person with a disability in the price, eligibility criteria, methods of administration, standards, terms, or conditions upon which access to such accommodations, advantages, facilities, or privileges may depend." *N.J.A.C.* 13:13-4.3(a).

26.     The V.s engaged in a protected activity and suffered an adverse action at the hands of the the BOE in the pursuit of her education and the adverse harm suffered by the V.s was, at minimum, causally linked, to the BOE's actions or omissions. *N.J.S.A.* 10:5-12(d) and (e).

**WHEREFORE,** Plaintiff demands judgment against  the BOE as follows:

a. Compensatory and consequential damages:

b. Reasonable attorney's fees and costs;

c. Enhancement to the attorney fee award; and

d. Such other relief as the Court deems just.

<div align="center">JURY DEMAND</div>

Plaintiffs demand trial by jury on all issues so triable.

<div align="center">

Attorney for Plaintiffs,

JAMIE EPSTEIN, ESQ.
Dated: 4/30/22

</div>



### *State of New Jersey*
OFFICE OF ADMINISTRATIVE LAW

**FINAL DECISION**
**ON EMERGENT RELIEF**
OAL DKT. NO. EDS 06254-20
AGENCY DKT. NO. 2020-31711

**B.V. and B.V. ON BEHALF OF B.V.,**

      Petitioners,

          v.

**CHERRY HILL TOWNSHIP BOARD**
**OF EDUCATION, CAMDEN COUNTY,**

      Respondent.

_____

      **Jamie Epstein,** Esq., for petitioners

      **Robin S. Ballard,** Esq., for respondent (Schenk, Price, Smith & King LLC, attorneys)

Record Closed:  July 15, 2020                 Decided:  July 16, 2020

BEFORE **JACOB S. GERTSMAN,** ALJ t/a:

### STATEMENT OF THE CASE

      In this matter, Petitioners B.V. and B.V. (Parents) bring an application for emergent relief against the Cherry Hill Township Board of Education (CHBOE) on behalf of minor student B.V., asserting that respondent had failed to provide services based on the stay-put 2019-2020

OAL DKT. NO. EDS 06354-20

Individualized Education Program (IEP).  Respondent concedes that the services should be provided based on the stay-put 2019-20 IEP which renders the request for emergent relief moot.

## PROCEDURAL HISTORY

On July 9, 2020, petitioner filed an application for emergent relief with the Office of Administrative Law. [1]  The parties presented oral argument on the emergent relief application on July 15, 2020 via Zoom Video Communications, Inc.

## FACTUAL DISCUSSION AND FINDINGS

For purposes of deciding this request for emergent relief, the following pertinent facts which form the basis for the determination herein, are not in dispute.  B.V. was born on October 31, 2014, and is classified as eligible for special education and related services under the category of Communication Impaired.  She completed the 2019-2020 school year as a pre-school student with a disability and will enter kindergarten in September of 2020.  An IEP was proposed by CHBOE for 2020-2021 for B.V. which was not agreed to by the parents.[2]

The extended school year (ESY) program commenced on July 6, 2020.  The parents contacted B.V.'s case manager, Michelle Giambrone (Giambrone) via electronic mail on June 30, 2020 (Petitioner's Request for Emergent Relief at 3), seeking confirmation that B.V. would receive services based on the stay-put from the 2019-2020 IEP.  Giambrone replied by electronic mail dated July 1, 2020 that "services will reflect what was written in the 19-20 IEP," however, she listed the services reflected in the proposed 2020-2021 IEP, which provided fewer services for B.V.  Id. at 4.  Petitioners responded to Giambrone by electronic mail later on July 1, 2020, advising her of her error.  Id. at 5.  Giambrone replied shortly thereafter advising that "[s]ervices will reflect the 20-21 IEP for summer ESY programs and services."  Id. at 6.  Following the filing the instant Request for Emergent Relief, Trina Ragsdale (Ragsdale), the Supervisor of Pupil Services, contacted petitioners via electronic mail on July 9, 2020, stating the following:

---

[1]  Petitioners' underlying due process was previously filed with the Office of Special Education Policy and Dispute Resolution (SPDR or Department) and transmitted to the OAL.

[2]  The subsequent mediation failed to resolve the dispute which subsequently led to the filing of petitioners' due process petition.

OAL DKT. NO. EDS 06354-20

> Please excuse any confusion, to clarify, ESY speech services as
> listed in the 19-20 stay put IEP will be followed.  We are willing to
> make up the two individual speech sessions that were missed.
> Feel free to contact me with any questions.
>
> (Respondent's Opposition to Request for Emergent Relief at
> Exhibit 1.)

At oral argument, petitioners claimed that while B.V. has already received one speech for the week beginning on July 13, 2020, a second one has yet to be scheduled.  CHBOE was unable to confirm if a second session has in fact been scheduled, but did not dispute that stay-put based upon the 2019-2020 IEP remains in effect.

## <u>LEGAL ANALYSIS AND CONCLUSION</u>

The regulations governing controversies and disputes before the Commissioner of Education provide that "[w]here the subject matter of the controversy is a particular course of action by a district board of education . . . the petitioner may include with the petition of appeal, a separate motion for emergent relief or a stay of that action pending the Commissioner's final decision in the contested case."  N.J.A.C. 6A:3-1.6(a).  The regulations further provide that the Commissioner may "[t]ransmit the motion to the OAL for immediate hearing on the motion." N.J.A.C. 6A:3-1.6(c)(3).

At such a hearing, the petitioner must show that he or she satisfies the following four standards:

1.    The petitioner will suffer irreparable harm if the requested relief is not granted;

2.    The legal right underlying petitioner's claim is settled;

3.    The petitioner has a likelihood of prevailing on the merits of the underlying claim; and

4.    When the equities and interests of the parties are balanced, the petitioner will suffer greater harm than the respondent will suffer if the requested relief is not granted.

OAL DKT. NO. EDS 06354-20

In a matter involving the application of stay-put, however, petitioner is not required to meet the above test.  Rather, the stay-put acts as an automatic statutory injunction against any attempt to change a student's placement from that which is in effect at the time the parents invoke the dispute-resolution procedures embodied in state and federal law.  Drinker v. Colonial Sch. Dist., 78 F.3rd 859, 864 (3d Cir. 1996).

The "stay-put" provision of the Individuals with Disabilities Education Act (IDEA) provides in pertinent part:

> [D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents agree otherwise, the child shall remain in the then-current educational placement of the child.
>
> [20 U.S.C.A. § 1415(j).]

Furthermore, pursuant to the New Jersey Administrative Code, no changes are to be made to a child's classification, program or placement unless emergency relief is granted.  N.J.A.C. 6A:14-2.7(u) specifically provides:

> Pending the outcome of a due-process hearing, including an expedited due-process hearing, or any administrative or judicial proceeding, no change shall be made to the student's classification, program or placement unless both parties agree, or emergency relief as part of a request for a due-process hearing is granted by the Office of Administrative Law according to (m) above or as provided in 20 U.S.C. §1415(k)4 as amended and supplemented.

The "stay-put" provision acts as an automatic preliminary injunction, the overarching purpose of which is to prevent a school district from unilaterally changing a disabled student's placement.  See, Drinker, 78 F.3d at 864.  In terms of the applicable standard review, the emergent-relief factors set forth in N.J.A.C. 6A:14-2.7(r)-(s), N.J.A.C. 1:6A-12.1, and Crowe v. DeGioia, 90 N.J. 126, 132-43 (1982), are generally inapplicable to enforce the "stay-put" provision.  As stated in Pardini v. Allegheny Intermediate Unit, 420 F.3d, 188 (3d Cir. 2005), "Congress has already balanced the competing harms as well as the competing equities."

OAL DKT. NO. EDS 06354-20

In <u>Drinker</u> the Court explained:

> [T]he [IDEA] substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a . . . balance of hardships.
>
> [<u>Drinker</u>, 78 F.3d at 864 (citations omitted).]

In other words, if the "stay-put" provision applies, injunctive relief is available without the traditional showing of irreparable hard.  <u>Ringwood Bd. of Educ. v. K.H.J. ex rel K.F.J.</u>, 469 F. Supp. 2d 267 (D.N.J. 2006).  Under those circumstances, it becomes the duty of the court to ascertain and enforce the "then-current educational placement" of the handicapped student.  <u>Drinker</u>, 78 F.3d at 865.

The purpose of "stay-put" is to maintain stability and continuity for the student.  The first preference for interim placement is one agreed to by the parties.  However, when the parties are unable to agree, the placement in effect when the due process request was made, i.e., the last uncontroverted placement or program, is the status quo.  In the instant matter, it is not in dispute that respondent must provide services to B.V. based upon the 2019-2020 IEP.  Notwithstanding this agreement, the parties have failed to resolve this matter, which undoubtedly could have been effectuated through greater communication, or by the scheduling of the required speech services by CHBOE.  Unfortunately, neither has occurred.  Therefore, as the record does not reflect whether the speech services have in fact been provided to B.V. for the ESY period that commenced on July 6, 2020, I **CONCLUDE** that CHBOE has not provided the services to B.V. as specified in the stay-put 2019-2020 IEP.  I further **CONCLUDE** that the 2019-2020 IEP shall remain as stay-put during the pendency of this proceeding.

<u>**ORDER**</u>

It is **ORDERED** that the 2019-2020 IEP shall remain as stay-put during the pendency of this proceeding.

OAL DKT. NO. EDS 06354-20

It is Further **ORDERED** that this tribunal shall reserve a finding on the remaining issues set forth in the due process petition until after the hearing in this matter has been completed.

This decision on application for emergency relief shall remain in effect until the issuance of the decision on the merits in this matter.  If petitioner feels that this decision is not being fully implemented with respect to program or services, this concern should be communicated in writing to the Director, Office of Special Education Programs.

July 16, 2020
DATE

**JACOB S. GERTSMAN,** ALJ t/a

Date Received at Agency:                          July 16, 2020

Date Mailed to Parties:                             July 16, 2020

JSG/nd



*State of New Jersey*
OFFICE OF ADMINISTRATIVE LAW

<u>**FINAL DECISION**</u>

OAL DKT. NO. EDS 06354-20

AGENCY DKT. NO. 2020-31711

**F.V. and M.V. on behalf of B.V.,**[1]

    Petitioners,

          v.

**CHERRY HILL TOWNSHIP BOARD**
**OF EDUCATION, CAMDEN COUNTY,**

    Respondent.

_____

    **Jamie Epstein,** Esq., for petitioners

    **Eric L. Harrison,** Esq., for respondent (Methfessel & Werbel, P.C., attorneys)[2]

Record Closed: June 11, 2021          Decided:  June 17, 2021

BEFORE **JACOB S. GERTSMAN,** ALJ:

<u>**STATEMENT OF THE CASE**</u>

    In this matter, Petitioners F.V. and M.V. (Parents), on behalf of B.V., bring an application seeking placement in an inclusion class with a 1:1 aide, against respondent, the Cherry Hill Township Board of Education (CHBOE or District).  The District asserts that it has provided B.V. with the relief requested and therefore the matter is moot.

---

[1]  By order dated December 3, 2021, the caption in the instant matter was amended in order to further protect the parents' privacy.

[2]  Mr. Harrison was preceded in this matter representing the CHBOE by Shifra Tarica, Esq., and Robin Ballard Esq.

OAL DKT. NO. EDS 06354-20

## <u>PROCEDURAL HISTORY</u>

The request for due process was received by the Office of Special Education Programs (OSEP) on June 9, 2020.  The matter was transmitted to the Office of Administrative Law (OAL) where it was filed as a contested case on July 9, 2020, pursuant to N.J.S.A. 52:14B-1 to 15; N.J.S.A. 52:14F-1 to 13 and assigned to the undersigned.  On July 9, 2020, petitioners filed an application for emergent relief with the Office of Administrative Law, which was also assigned to the undersigned.  The parties presented oral argument on the emergent relief application on July 15, 2020, via Zoom Video Communications, Inc. (Zoom).

The emergent relief was granted by order dated July 16, 2020, which stated:

> In the instant matter, it is not in dispute that respondent must provide services to B.V. based upon the 2019-2020 IEP. Notwithstanding this agreement, the parties have failed to resolve this matter, which undoubtedly could have been effectuated through greater communication, or by the scheduling of the required speech services by CHBOE.  Unfortunately, neither has occurred.  Therefore, as the record does not reflect whether the speech services have in fact been provided to B.V. for the ESY period that commenced on July 6, 2020, I **CONCLUDE** that CHBOE has not provided the services to B.V. as specified in the stay-put 2019-2020 IEP.  I further **CONCLUDE** that the 2019-2020 IEP shall remain as stay-put during the pendency of this proceeding.

The undersigned conducted the first telephone hearing in the instant matter on July 17, 2020, and additional hearing dates were scheduled for August 20 and 31, 2020, and September 9, 10, and 11, 2020.  By letter dated August 13, 2020, CHBOE sought an adjournment of the August 20 and 31, 2020, hearing dates.  The adjournment was granted over petitioners' objection on August 17, 2020.  In a letter to the parties detailing my rationale for granting CHBOE's request, I stated in part,

OAL DKT. NO. EDS 06354-20

> [t]he District, along with all districts in New Jersey and throughout our country, is faced with an unprecedented task in the coming weeks as it prepares for the September opening of schools in the midst of the ongoing COVID-19 pandemic.  Accordingly, as these preparations, along with Ms. Weathington's family obligation, have made her unavailable on August 20 and 31, 2020, I am granting the District's request for adjournment of those hearing dates.

However, I added that "[w]hile I am mindful that the operation of schools in this environment is a daunting challenge, the IDEA intends that due process matters be heard expeditiously. 34 C.F.R. §300.515(a).  As the need and obligation to proceed with the hearing is clear, no further adjournments will be granted."

Prior to the commencement of the September 9, 2020, hearing, the parties advised the undersigned that they wished to engage in an attempt to reach a resolution in this matter.  Following lengthy discussions presided over by a settlement judge, the parties reached an agreement which was then entered into the record.  However, the parties notified the undersigned on October 2, 2020, that they were unable to complete the settlement.  On October 2, 2020, petitioners filed a motion to enforce the settlement which was opposed by the CHBOE.  In the midst of oral argument on the motion conducted via telephone on October 21, 2020, petitioners withdrew the motion.  However, petitioners' motion to amend the pleadings, filed on July 21, 2020, and opposed by CHBOE, and previously tabled by the undersigned, was granted on the record during that same hearing.  Petitioners sought the following relief in the amended petition:

> The parents request that the [d]istrict provide services based on [B.V.'s] stay-put 19-20 IEP, for both the ESY 2020 term, as well as the 2020-2021 term. The parents request the [d]istrict provide makeup sessions for any services they failed to provide as required by the stay-put IEP.

At the conclusion of the hearing, the parties agreed to, and the undersigned scheduled, new hearing dates for December 11, 2020, January 4, 2021, and February 8 and 12, 2021.

OAL DKT. NO. EDS 06354-20

On November 4, 2020, CHBOE filed a motion to dismiss the matter contending that the relief sought in the petition was moot. Petitioners filed its opposition, along with a revival of its previously withdrawn motion to enforce the settlement, on December 2, 2020. The District filed its response to petitioners and its opposition to the revived motion later on December 2, 2020.

At the December 11, 2020, hearing, the undersigned denied petitioners' motion to enforce the settlement. CHBOE's motion was deferred in order for respondent's witnesses to testify and I further noted that the motion would be revisited after respondent's case was completed. The parties then proceeded with their opening statements. Additional hearings were held via Zoom on January 4 and February 8, 2021, and via telephone on February 12, 2021. Following the completion of respondent's case on January 4, 2021, CHBOE's motion was denied.

Post hearing briefs were due on March 15, 2021, and an additional telephone hearing was scheduled for March 19, 2021. By letter dated March 10, 2021, the parties jointly requested that the briefing schedule be suspended in order to have this matter, along with a separate matter involving the same parties which has also been assigned to the undersigned (<u>F.V. and M.V. o/b/o B.V. v. Cherry Hill Twp BOE</u>, OAL Docket Number 01556-2021) referred to a settlement judge in order to engage in global settlement discussions. On March 25, 2021, petitioners informed the undersigned that there was no reasonable expectation of a settlement and requested a new due date for post hearing submissions. During a telephone hearing held on March 29, 2021, a new deadline of April 26, 2021, was set for post hearing submissions and a telephone hearing was scheduled for May 18, 2021.

CHBOE's brief was timely filed, however, petitioners failed to do so. On April 28, 2021, during the second business day following the deadline for the submission and having heard nothing from petitioners' counsel, my judicial assistant sent an email at my direction instructing counsel for petitioners to notify my chambers on the status of his submission. Counsel was further notified that a request for an extension of the deadline would additionally need to be filed. After the close of business on April 28, 2021, my chambers received a letter from counsel for petitioners stating that he "was away and just saw your email" and requesting additional time. In an email to the parties from my chambers, the parties were informed that an extension of the deadline for the

OAL DKT. NO. EDS 06354-20

post-hearing brief would also necessitate a rescheduling of the May 18, 2021, telephone hearing. Counsel was directed to resubmit his request and indicate if he had the District's consent.

On April 30, 2021, petitioners' counsel submitted a revised submission which failed to address all issues raised by the undersigned. Counsel was directed to submit a revised response no later than 11:00 a.m. Following a subsequent submission by counsel, the parties were notified via email from my chambers that based on that submission, it was clear petitioners' counsel was requesting an extension of the April 26, 2020, deadline to submit his post-hearing brief to Monday May 3, 2021, and an adjournment of the telephone hearing scheduled for May 18, 2021. As CHBOE consented, both requests were granted. The undersigned scheduled a telephone hearing for June 11, 2021.

Petitioners subsequently sought an additional extension until May 5, 2021, which was granted, and the summation was received on that date. A telephone hearing was held on June 11, 2021, and the record closed.

## <u>FACTUAL DISCUSSION AND FINDINGS</u>

The following facts are not in dispute, and I **SO FIND.** B.V., who is six years old, resides with her family in Cherry Hill and is currently enrolled in kindergarten in the Cherry Hill School District. B.V., who has Down syndrome, is eligible for special education and related services under the category of "communication impaired." Prior to kindergarten, during the 2019-2020 school year, B.V. was eligible for special education and related services under the category of "preschool child with a disability" and was placed in a self-contained setting. (R-1.)

OAL DKT. NO. EDS 06354-20

## **TESTIMONY**[3]

**Trina Ragsdale (Ragsdale),** is the supervisor of special education for CHBOE.  She oversees the delivery of special education programs within eight of the District's schools, consisting of over 3,000 students, and is personally familiar with B.V.

She reviewed the petition for due process and testified that the District wanted to be collaborative and thought the District could provide what the parents were asking for, placement in a general education setting with an aide.  She described a "self-contained setting" as where a special education teacher provides the level of instruction required by the student, and the students within that classroom are all classified.  Additionally, she understood that in May 2020, petitioners wanted B.V. to be placed in a general education setting.

Ragsdale provided the background of B.V.'s IEPs utilized for preschool and proposed for kindergarten.  The IEP developed in the Spring of 2019 by the preschool child study team for B.V.'s 2019-2020 school year proposed placement in a self-contained preschool half-day program for B.V. for the 2019-2020 school year.  B.V. did attend this program for the 2019-2020 school year.  (R-1.)  The IEP developed in March 2020 by the preschool child study team for B.V.'s 2020-2021 school year recommended placement in a special class mild to moderate language and learning disabilities, which is a self-contained program.  (R-2.)

Regarding the missed speech lessons, Ragsdale emailed the parents on July 9, 2020, stating that the District was "willing to make up the two individual speech lessons that were missed." (R-3.)  She was copied on the July 22, 2020, email from the parents to B.V.'s speech therapist, Kathleen Mullee, indicating that their attorney would be handling the scheduling of additional speech sessions to compensate for the two missed sessions.  (R-4.)  When questioned as to what prompted this email, she noted that in her conversation with Mullee she stated that "we were following the stay-put IEP and -- B.V. was entitled to make-up sessions that

---

[3]  As further discussed in the legal analysis, both Ragsdale and Pipan were questioned, over the objection of the CHBOE, on issues that were not included in either the original petition or the amended petition.  Accordingly, that testimony will not be summarized.

OAL DKT. NO. EDS 06354-20

were missed as reported by parents to schedule those makeup sessions.  And, so she was directed to contact parents to schedule those make up sessions." (TT1 17: 14-20.)[4]  To date, the parents have not responded directly to Ragsdale. However, they reiterated in an October 5, 2020, email to  B.V.'s counselor Lynda Slimm, that the rescheduling of the speech sessions would be handled by their attorney.  (R-5.)

Ragsdale testified that B.V. was ultimately placed in a general education setting with a 1:1 aide.

> [M]y direction to the Team, once we, you know, understood what the parents were seeking and again, in an attempt to be collaborative and working with the family and wanting to resolve the matter, we agreed to place B.V. in a general education setting and the Team at the elementary school was informed that she should be placed in a general education classroom with an aide.
>
> (TT1 19: 23-35, 20: 1-5.)

The first day of B.V.'s placement was September 10, 2020.  Further, the attendance records (R-6) indicate that prior to that date, B.V. did not attend the general education class with a 1:1 aide for the two days that schools were open.

Finally, the finalized IEP described the program that B.V. had been receiving since September 10, 2020.  The related services placed in this finalized IEP were of the same type, frequency and duration as the related services in B.V.'s IEP for the prior 2019-2020 school year, with the only addition being the 1:1 aide.  (R-1, R-11.)  When Ragsdale was asked why the 1:1 aide was added, she responded "[b]ecause that's what the parents requested, that's what they asked for."  (TT1 32:13-14).

On cross-examination, when questioned as to the existence of expert reports and whether a general education setting was considered as a placement for B.V., Ragsdale explained that the team relies on the reports completed by the child study team. She added that

---

4    Hereinafter, "TT1" shall refer to the transcript of the January 4, 2021, hearing.

OAL DKT. NO. EDS 06354-20

at the time of the testimony, B.V. was attending school via virtual learning.[5]  She reiterated that B.V. is assigned a 1:1 aide who provides support which is reflected in B.V.'s progress reports.

On re-direct, Ragsdale stated that the documentation of the 1:1 aide's involvement with B.V. is reflected within the IEP educational performance summary provided by B.V.'s kindergarten teacher on or about November 17, 2020.  (R-11 at 6.)

On re-cross-examination, Ragsdale stated this is the proposed IEP which accurately reflects B.V.'s current program.  However, the parents had not consented to the IEP.

**Dr. Mary Pipan (Pipan),** the program director of the Trisomy 21 Program at the Children's Hospital of Philadelphia (CHOP), was accepted as an expert witness in Developmental Pediatrics with an expertise in Down Syndrome or Trisomy-21.

She identified a letter she wrote on August 31, 2020, (P-13) after an in-person evaluation she performed on B.V. on August 27, 2020, "about advocating for her needs within the school system and within the educational system."  (TT2 12:14-14.)[6]  By way of background, Pipan sees children from infancy to adulthood with Trisomy-21 and monitors their medical, developmental, behavior, educational, and mental health issues so that they may flourish and grow into adulthood as able as they can. B.V. was a patient of her clinic on a regular basis. B.V.'s evaluation

> [c]onsisted of observing her behavior throughout the visit, including her attentiveness to others, her attention her cooperation, her compliance.  I assessed her screener for her – I assessed her speech through the pre-school language skill five screener to follow her progress along across time and also reviewed her parents ratings of her attention and focus and then her ability to draw the test vision of motor integration is a test that our occupational therapist performed as well.  Then I also talked with the OT and PT about their impressions as well about their observations.
>
> (TT1 14:6-17.)

---

[5]   At the time of Ragsdale's testimony, the Cherry Hill School District was operating remotely.

[6]   Hereinafter, "TT2" shall refer to the transcript of the February 8, 2021, hearing.

OAL DKT. NO. EDS 06354-20

She also reviewed observations conducted and prepared by the CHBOE.  When questioned about her opinion on B.V.'s placement, she testified that "[o]ur opinion as, you know, from the Trisomy 21 clinic including the OT and PT input and my observations is that she would be a great candidate for a general education classroom and that's where she belonged."  (TT2 17:14-18.)

Finally, Pipan recommended a 1:1 aide.  She elaborated that

> I think in a small structured in general ed environment, for example a private school setting that may have ten or eleven kids per classroom.  She may not need an aide, but in a regular ed classroom she would need an aide and the aide is there to basically, one, for safety, for example taking her places within the school that she may have to go for example to therapies or to use the facilities.  The other would be to facilitate interaction and engagement with peers.  Thirdly to adapt the curriculum to meet her needs and fourth would be to carry over the lessons that she's learning in therapies into her gen ed classroom environment.

(TT2 19:12-24.)

The District had no cross-examination for Pipan.

**F.V.** is the father of B.V.  He provided a background of his family, including that B.V. attends kindergarten in a general education classroom, and has a male twin who is not classified to receive special education.  F.V. further noted B.V. received services through New Jersey's early intervention program and discussed B.V.'s placement history in the District's preschool program during the 2017-2018 and 2018-2019 school years.

B.V. attended the District's 2019 extended school year program, which provided programming three hours a day, four days a week, for four weeks.  For the 2019-2020 school year, B.V. again attended the half-day self-contained preschool program.

The parents would have liked B.V. to be placed in the general education setting for eighty percent or more of the day for the 2019-2020 school year for kindergarten.  However,

OAL DKT. NO. EDS 06354-20

the proposed IEP (P-3), which they rejected, called for B.V. to have exposure to the general education setting for less than forty percent of the day.  Another meeting was scheduled to discuss the parent's request for a general education placement which focused on B.V.'s performance at school.  F.V. testified that "about twenty-five to thirty minutes into the meeting the team at the school decided that the meeting was going to end, and they were going to send us the latest version of the IEP and if we needed to file for due process that would need to be the next step."  (TT2 69: 13-18.)

The extended school year for 2020 was conducted virtually due to the pandemic.  B.V. began the 2020-2021 school year in a self-contained class and she was placed in what F.V. referred to as a "temporary placement" in a general education remote class.  (TT2 92:8-9.) F.V. testified that he provided assistance to B.V. during the remote instruction.

Currently B.V. receives two physical therapy sessions per week for twenty-five minutes each, two occupational therapy sessions per week for twenty-five minutes each, and four speech sessions per week (two for twenty minutes each and two for ten minutes each.  When asked if there was a 1:1 aide for B.V. in the general education class, he responded that "[t]here was a classroom aide, but nobody made us aware that there was a one on one aide specifically assigned to work with B."  (TT2 108:19-21.)  He added that there was no remote interaction between B.V. and the classroom aide who was supposed to be B.V.'s aide.

On cross-examination F.V. stated that B.V. missed two speech sessions.  When asked why he did not schedule the make-up speech lessons himself, he testified that he retained an attorney.  He admitted that of the fifteen to seventeen children in B.V.'s classroom, several have parents assisting them during remote instruction.

## **FINDINGS OF FACT**

It is the duty of the trier of fact to weigh each witness's credibility and make a factual finding. Credibility is the value a fact finder assigns to the testimony of a witness, and it contemplates an overall assessment of the witness's story considering its rationality, consistency, and how it

OAL DKT. NO. EDS 06354-20

comports with other evidence.  Carbo v. United States, 314 F.2d 718 (9th Cir. 1963); see, In re Polk, 90 N.J. 550 (1982).  Credibility findings "are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record."  State v. Locurto, 157 N.J. 463 (1999).  A fact finder is expected to base decisions on credibility on his or her common sense, intuition or experience.  Barnes v. United States, 412 U.S. 837 (1973).  A trier of fact may reject testimony because it is inherently incredible, or because it is inconsistent with other testimony or with common experience, or because it is overborne by other testimony.  Congleton v. Pura-Tex Stone Corp., 53 N.J. Super 282, 287 (App. Div. 1958).

I deem Ragsdale's testimony to be credible.  She testified in a manner that demonstrated her professionalism and thorough understanding of the issues.  Further, her testimony was calm, clear, direct, and consistent with the record.  It is not in dispute that B.V. was placed in a general education setting in September 2020, as requested by the parents.  In fact, F.V. testified on direct examination that B.V. was in a general education setting, notwithstanding the fact that he characterized it as a "temporary placement."   Ragsdale's testimony, supported by B.V.'s attendance records (R-6), demonstrates that this placement occurred on September 10, 2020.  Further, her testimony that she directed her team to place B.V. in a general education setting with a 1:1 aide (TT1 19: 23-35, 20: 1-5) is supported by the IEP educational performance summary provided by B.V.'s Kindergarten teacher on or about November 17, 2020, which states "[B.V.] participates in remote instruction in her general education kindergarten class with educational one-on-one assistance."  (R-11 at 6.)

I additionally deem Dr. Pipan, who was admitted as an expert witness in Developmental Pediatrics with an expertise in Down Syndrome or Trisomy-21, but not in special education, a credible witness solely regarding her testimony related to the contents of her report.  Dr. Pipan also testified in a professional and calm manner and explained the rationale for her opinions.  It should be noted that CHBOE does not challenge Pipan's report or her recommendation.  However, as noted in the summary of her testimony, and which is further addressed in the legal analysis, her testimony relating to how a 1:1 aide should assist B.V., as opposed to whether B.V. should have a

OAL DKT. NO. EDS 06354-20

1:1 aide, is not relevant to the instant matter as those issues were not raised in the petition for due process. Accordingly, I make no findings to her credibility on that testimony.

F.V. has demonstrated that he is a dedicated and devoted parent to B.V. However, his testimony that "nobody made us aware that there was a one on one aide specifically assigned to work with B" (TT2 108:19-21), is not believable as it is inconsistent with the documentary evidence in the record (R-11), along with Ragsdale's credible testimony. Accordingly, I deem his testimony on that issue not credible.

Having considered the testimonial and documentary evidence presented I **FIND** the following additional **FACTS:**

There is no dispute that that B.V. was placed in a general education class beginning on September 10, 2020. (R-6.) F.V.'s testimony does not dispute that this placement occurred. (TT2 92:8-9.) Petitioners' sole argument rests on their naked assertion that the District presented no evidence that B.V. was receiving a 1:1 aide, [Petitioners' Post Hearing Brief (Petitioners' Brief) at 8] which is wholly unsupported by the record. CHBOE has presented documentary evidence, consistent with Ragsdale's credible testimony, that B.V. has a 1:1 aide. (R-11.) Accordingly, B.V.'s placement in a general education setting that began on September 10, 2020, included a 1:1 aide. Further, the related services placed in the finalized IEP were of the same type, frequency, and duration as the related services in B.V.'s IEP for the prior 2019-2020 school year, with the only addition being the 1:1 aide. (R-1, R-11.)

## <u>LEGAL ANALYSIS AND CONCLUSION</u>

The Individuals with Disabilities Education Act (IDEA), as amended by the Individuals with Disabilities Education Improvement Act (IDEIA), 20 U.S.C. §§ 1400-1482, provides the framework for special education in New Jersey. It is designed "to ensure that all children with disabilities have available to them free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A); <u>see</u>, generally <u>Id.</u> § 1400(c), (d) (describing need for, and

OAL DKT. NO. EDS 06354-20

purposes of, the IDEA).  A state may qualify for federal funds under the IDEA by adopting "policies and procedures to ensure that it meets" several enumerated conditions.

This Act requires that boards of education provide students between the ages of three and twenty-one who suffer from a disability with a free appropriate public education, or FAPE.  In fulfilling its FAPE obligation, the Board must develop an IEP for the student, and the IEP must be reasonably calculated to confer some educational benefit.  Hendrick Hudson District Board of Education v. Rowley, 458 U.S. 176, 192, 73 L.Ed. 2d 690, 703, 102 S.Ct. 3034 (1982) (Rowley). The Third Circuit Court of Appeals has clarified the meaning of this "educational benefit."  It must be "more than trivial and must be significant" and "meaningful."  Polk v. Central Susquehanna Intermediate Unit 16, 853 F.2d 171, 180 (3rd Cir. 1988), cert. denied, 488 U.S. 1030 (1989) (Polk); Ridgewood Board of Education v. N.E., 172 F.3d 238, 247-48 (3rd Cir. 1999) (Ridgewood).  In evaluating whether a FAPE was furnished, an individual inquiry into the student's potential and educational needs must be made.  Ridgewood, 172 F.3d at 247.  In providing a student with a FAPE, a school district must provide such related services and supports as are necessary to enable the disabled child to benefit from the education.  Rowley, 458 U.S. at 188-89.  If an administrative law judge finds that a district has not made FAPE available to a student who previously received special education in a timely manner prior to his enrollment in a nonpublic school, the judge may require the district to reimburse the parents for the cost of that enrollment if the private placement is appropriate.  N.J.A.C. 6A:14-2.10.

Parents who are dissatisfied with an IEP may seek an administrative due-process hearing. 20 U.S.C.A. § 1415(f).  The burden of proof is placed on the school district.  N.J.S.A. 18A:46-1.1. The Board will satisfy the requirement that a child with disabilities receive a FAPE by providing personalized instruction with sufficient support services to permit that child to benefit educationally from instruction.  Hendrick Hudson Cent. Sch. Dist. Bd. of Educ. v. Rowley, 458 U.S. 176, 203, 102 S. Ct. 3034, 3049, 73 L. Ed. 2d 690, 710 (1982).  To meet its obligation to deliver a FAPE, a school district must offer an IEP that is reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances.  Endrew F. v. Douglas Cnty. Sch. Dist., 580 U.S. (2017);137 S.Ct. 988; 197 L. Ed 2d 335.  In Endrew, the District Court for the District of Colorado initially upheld the school denial of a reimbursement for an out of district placement.  However, the

OAL DKT. NO. EDS 06354-20

Supreme Court reversed finding that an IEP should be appropriately ambitious in light of the child's circumstances, and "tailored to the unique needs of a particular child."

In <u>Endrew F. v. Douglas County School District RE-1</u>, 137 S. Ct. 988, 1001 (2017), the United States Supreme Court construed the FAPE mandate to require school districts to provide "an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."  The Court's holding in <u>Endrew F.</u> largely mirrored the Third Circuit's long-established FAPE standard, which requires that school districts provide an educational program that is "reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential and individual abilities." <u>Dunn v. Downingtown Area Sch. Dist. (In re K.D.)</u>, 904 F.3d 248, 254 (3rd Cir. 2018) [quoting <u>Ridley Sch. Dist. v. M.R.</u>, 680 F.3d 260, 269 (3rd. Cir. 2012)].  In addressing the quantum of educational benefit, the Third Circuit has made clear that more than a "trivial" or "de minimis" educational benefit is required, and the appropriate standard is whether the IEP provides for "significant learning" and confers "meaningful benefit" to the child.  <u>Endrew F.</u>, 137 S. Ct. at 1000–01; <u>T.R. v. Kingwood Twp. Bd. of Educ.</u>, 205 F.3d 572, 577 (3d Cir. 2000); <u>Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.</u>, 172 F.3d 238, 247 (3d Cir. 1999), <u>superseded by statute on other grounds as recognized by</u> <u>P.P. v. W. Chester Area Sch. Dist.</u>, 585 F.3d 727 (3d Cir. 2009); <u>Polk v. Cent. Susquehanna Intermediate Unit 16</u>, 853 F.2d 171, 180, 182–84 (3d Cir. 1988).  Hence, an appropriate educational program will likely "produce progress, not regression or trivial educational advancement."  <u>Dunn</u>, 904 F.3d at 254 (quoting <u>Ridley</u>, 680 F.3d at 269).

The District reiterated in its brief that Ragsdale and Pipan were permitted to testify to issues beyond the scope of the amended petition.  Specifically, on cross-examination, Ragsdale was questioned about the "mode and manner of services delivered to B.V. in the virtual learning setting during a period of pandemic-related building closures, such as B.V.'s receipt of assistance from a 1:1 aide, and whether the virtual program provided B.V. with a free and appropriate public education."  [District Post Hearing Brief (District Brief) at 12.]  Additionally, Dr. Pipan was permitted to testify beyond the scope of her report with respect to "her opinion as to how a 1:1 aide should assist B.V. as opposed to whether B.V. should have a 1:1 aide."  (<u>Id.</u> at 16.)

OAL DKT. NO. EDS 06354-20

CHBOE argues that "[t]his Court in the context of this case does not have jurisdiction to address any additional claims and/or requests for relief that exceed the scope of the issues set forth in the original petition and the amended petition." N.J.A.C. 1:1-3.2(a); N.J.A.C. 1:1-3.2(b). (District Brief at 26.)  I agree.  It is evident that petitioners failed to raise these issues in either the petition for due process or in the amended petition that I granted over the objection of CHBOE.  Further, the District accurately states that these issues were raised by petitioners in the separate matter involving the parties (F.V. and M.V. o/b/o B.V. v. Cherry Hill Twp BOE, OAL Docket Number 01556-2021), that has not been consolidated with the instant matter.  (Id. at 28.)  Accordingly, I **CONCLUDE** that the issues to be resolved here are solely those set forth in the petition and the amended petition.

In addressing those issues, the District renews its argument that the matter is moot, stating that "[t]he relief requested in both petitions has been provided, with the exception of the makeup speech sessions whose delivery the Petitioners have declined to accept.  There exists no active case or controversy."  (District Brief at 34.)

An action is considered moot when it no longer presents a justiciable controversy, and the conflict between the parties has become merely hypothetical.  In re Conroy, 190 N.J. Super. 453, 458 (App. Div. 1983).  A case is considered "'moot' when the decision sought . . . can have no practical effect on the existing controversy."  Greenfield v. N.J. Dep't of Corr., 382 N.J. Super. 254, 257-58 (App. Div. 2006).

In P.S. ex rel. I.S. v. Edgewater Park Township Board of Education, EDS 10418-04, Final Decision (October 31, 2005), http://njlaw.rutgers.edu/collections/oal/, a parent filed for due process due to a disagreement over her District's proposed placement of her child, and requested a different, approved private school.  The District had agreed to the parent's placement request and moved to dismiss the petition as moot due to the same.  The parent wanted to continue the hearing to resolve other disagreements she had over the program that would be provided to the child at her requested placement.  The administrative law judge (ALJ) concluded that the relief sought by the parent had already been granted by the District through their agreement to place the child at

OAL DKT. NO. EDS 06354-20

her requested school.  The ALJ dismissed the petition as moot and reasoned that the parents had the right to file a new due process petition regarding other issues with the District.

While the District's motion for dismissal was denied at the close of its case, upon review of the complete record, the issue of whether the District has in fact provided the relief sought by petitioners remains.

Dr. Pipan provided unchallenged testimony regarding the recommendation in her report that B.V. be placed in a general education setting with a 1:1 aide.  Here, while the CHBOE did not initially place B.V. based upon that recommendation, which led to the parents filing the petition for due process, the District does not dispute that this placement is appropriate.  However, the record plainly demonstrates Dr. Pipan's recommendation was implemented beginning on September 10, 2020.  (R-6, R-11.)

Further, the District argues that "[a]s for the relief sought in the second petition – 'that the District provide services based on [B.V.'s] stay-put 19-20 IEP, for both the ESY 2020 term, as well as the 2020-2021 term' – the District has provided related services in the same frequency and duration set forth in her 2019-2020 IEP.  The demands in both petitions have been satisfied." (District Brief at 30.)  The record demonstrates that this is the case.  (R-1, R-11.)

B.V. was placed in a general education setting with a 1:1 aide beginning on September 10, 2020.  Further, the District has provided related services to B.V. in the same frequency and duration set forth in her 2019-2020 IEP.  With regard to the missed speech sessions, it is inexplicable that this issue, which the District sought to rectify on July 9, 2020, (R-3) and was addressed in my order granting the motion for emergent relief on July 16, 2020, some eleven months ago, remains unresolved.  CHBOE remains willing to schedule the make-up speech sessions, (District Brief at 32) and the parents have refused to accept the offer, instead referring the matter to counsel.  (R-4, R-5.)  While petitioners are well withing their rights to communicate with the District through counsel, their failure to accept the offer to schedule the make-up sessions, and to then argue to this tribunal that they are entitled to the awarding of these same sessions as compensatory education, (Petitioners' Brief at 15) turns logic on its head.  Put simply, in order to receive the make-

OAL DKT. NO. EDS 06354-20

up speech sessions for B.V., all the parents have to do is accept CHBOE's offer.  I **CONCLUDE** that their failure to do so does not render this a live controversy.

Based on the forgoing, I **CONCUDE** that the District has provided petitioners with the relief sought in both the petition and the amended petition.  I **FURTHER CONCLUDE** that a controversy no longer exists, meaning this case has become moot.

## ORDER

It is **ORDERED** that the petition should be and hereby is **DENIED.**

This decision is final pursuant to 20 U.S.C. § 1415(i)(1)(A) and 34 C.F.R. § 300.514 (2019) and is appealable by filing a complaint and bringing a civil action either in the Law Division of the Superior Court of New Jersey or in a district court of the United States.  20 U.S.C. § 1415(i)(2); 34 C.F.R. § 300.516 (2019).

June 17, 2021
DATE                                                    **JACOB S. GERTSMAN**, ALJ

Date Received at Agency:                        June 17, 2021

Date emailed to Parties:                          June 17, 2021 (emailed)

JSG/nd

OAL DKT. NO. EDS 06354-20

## APPENDIX

## WITNESSES

**For Petitioners:**

Dr. Mary Pipan

F.V.

**For Respondent:**

Trina Ragsdale

## EXHIBITS

**For Petitioners:**

P-1    IEP, dated April 18, 2019

P-2    Speech and Language Evaluation, Barclay Early Childhood Center, dated January 31, 2020

P-3    Child Study Team Evaluation, Psychological Report, Cherry Hill, New Jersey, dated February 11, 2020

P-4    Confidential Learning Re-evaluation/Observation, Cherry Hill Public Schools, Office of Special Education and Student Services, dated February 24 2020

P-5    Individual Child Report, dated March 9, 2020

P-6    Progress Report, dated March 9, 2020

P-7    Consent to Implement Initial IEP form, Cherry Hill Public School District

P-8    IEP 2020-2021 Meeting Agreement, dated March 30, 2020

P-9    Mary Pipan, MD, Curriculum vitae

P-10   Letter from Mary Pipan, MD, Clinical Director, Trisomy 21 Program, Report, dated June 26, 2020

P-11   Email from petitioners to Michelle Giambrone, Summer and Fall Education Plan, dated June 30, 2020

P-12   Email from Kathleen Mullee to petitioners, ESY Speech Therapy, dated July 1, 2020



P-13 Mary Pipan, MD, Clinical Director, Trisomy 21 Program, Addendum, Children's Hospital of Philadelphia, Division of Developmental and Behavioral Pediatrics, dated August 31, 2020

**For Respondent:**

R-1 IEP, dated April 18, 2019

R-2 IEP, dated March 30, 2020

R-3 Email from Trina Ragsdale, Supervisor of Special Education, Cherry Hill Public School District, to petitioners, regarding ESY speech services and stay-put, dated July 9, 2020

R-4 Email from petitioners to Kathleen Mullee, copied to Trina Ragsdale, regarding speech therapy, dated July 22, 2020

R-5 Email from petitioners to Lynda Slimm, copied to Trina Scott regarding declining makeup session 1, dated October 5, 2020

R-6 Attendance Records

R-7 IEP for the School Year 2020-2021, dated October 27, 2020

R-8 Request to Amend an IEP without a Meeting, dated October 26, 2020

R-9 Invitation to Assess Progress and Review or Revise IEP, dated October 29, 2020

R-10 Exhibit Not Admitted

R-11 Email from Leanne Bernosky, Ed.D; NCED, Learning Disability Teacher Consultant, Case Manager, to petitioners, finalized IEP, prior written notice; consent page; and two attendance pages, dated November 18, 2020

### *State of New Jersey*
OFFICE OF ADMINISTRATIVE LAW
P.O. Box 049
Trenton, New Jersey 08625-0049
(609) 689-4052
(609) 689-4100

JACOBS S. GERTSMAN
ADMINISTRATIVE LAW JUDGE t/a

<u>**LETTER ORDER**</u>

Jamie Epstein, Esq.                                    Eric L. Harrison, Esq.
Attorney at Law                                        Methfessel & Werbel
17 Fleetwood Drive                                     2025 Lincoln Highway, Suite 200
Hamilton, NJ  08690                                    PO Box 3012
                                                       Edison, NJ  08818

    Re:  **F.V. and M.V. on behalf of B.V.**
        <u>**v. Cherry Hill Township Board of Education, Camden County**</u>
        OAL Docket No. EDS 01556-21 / Agency Docket No. 2021-32438

Dear Counsel:

This letter order memorializes an order issued orally during the May 12, 2021, telephone hearing.  The above-referenced matter comes before this tribunal by motion for partial summary decision dated April 5, 2021.  Petitioner's response was filed on May 6, 2021, and respondent's reply was filed on May 10, 2121.[1]

The following facts are not in dispute and I **SO FIND.**  B.V. is enrolled in kindergarten in the Cherry Hill School District.  The instant matter concerns a petition for due process filed by F.V. and M.V. on behalf of their child B.V. on or about January 14, 2021, seeking an independent educational evaluation, appropriate accommodations for remote learning, along with compensatory education.  The petition was transmitted to the OAL, where it was filed on February 12, 2021.  N.J.S.A. 52:14B-1 to -15; N.J.S.A. 52:14F-1 to -13.

---

[1]  Petitioner failed to file its response by the May 3, 2021, deadline.  At the May 4, 2021 telephone status conference scheduled by the undersigned, counsel for the petitioner requested, and was granted, an extension for the filing its opposition to the motion.  Petitioner additionally requested, and was granted, an adjournment of the first  hearing date in this matter scheduled for May 11, 2021.

OAL DKT. NOS. EDU 16002-19

Petitioners had previously filed a petition for due process (BV1) on or about May 8, 2020, OAL Docket Number EDS 06354-20, seeking placement in an inclusion class with a 1:1 aide. The record in BV1, which was also assigned to the undersigned, remains open. The undersigned granted the petitioner's motion for emergent relief on July 16, 2020, concluding that respondent had not provided speech services to B.V. as specified in the stay-put 2019-2020 IEP, and the 2019-2020 IEP remained as stay-put during the pendency of the BV1 proceeding.   On October 20, 2020, the undersigned orally granted petitioner's motion to amend the BV1 petition to include a claim for compensatory education for the missed speech sessions.

In an administrative law matter, a "party may move for summary decision upon all or any of the substantive issues in a contested case."  N.J.A.C. 1:1-12.5(a).  The motion "shall be served with briefs and with or without supporting affidavits" and the decision "may be rendered if the papers and discovery which have been filed, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to prevail as a matter of law."  N.J.A.C. 1:1-12.5(b).  The non-moving party will prevail if they "set forth specific facts showing that there is a genuine issue which can only be determined in an evidentiary proceeding."  Id.

This standard is also set forth in New Jersey Court Rule 4:46-2, regarding a motion for summary judgment, which is substantially equivalent to an administrative law summary decision motion.  In Brill v. Guardian Life Insurance Co. of America, 142 N.J. 520 (1995), the New Jersey Supreme Court stated:

> [A] determination whether there exists a 'genuine issue' of material fact that precludes summary judgment requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
>
> Brill, 142 N.J. at 540.

OAL DKT. NOS. EDU 16002-19

Respondent's motion argues that "claims for compensatory education arising out of alleged violations prior to the 2020-2021 school year are barred by the entire controversy doctrine."   Further, "[s]ummary decision is appropriate because the Petitioners had the opportunity to raise compensatory education claims based on the 2018-2019 and 2019-2020 school years in the prior action and failed to do so.  As such, their demands for declaratory relief, compensatory education and any other relief arising out of alleged IDEA, Rehabilitation Act, ADA and other violations during prior school years are precluded by operation of law." (Respondent Brief at 2-3.)  Petitioner opposes the motion arguing that it is "procedurally deficient, silent on the material facts, and wrong on the law."  (Petitioner response brief at 5.)

With respect to respondent's motion

> [t]he [entire controversy doctrine] requires that a litigant assert in one action all related claims against all parties or be precluded from bringing a second action.  Melikian v. Corradetti, 791 F.2d 274, 279 (3d Cir.), cert. denied, 498 U.S. 821, 112 L. Ed. 2d 43, 111 S. Ct. 69, reh'g denied, 498 U.S. 1017, 112 L. Ed. 2d 598, 111 S. Ct. 594 (1990).   Accordingly, all claims which arise out of the same common nucleus of operative facts must be resolved in a single action.   Bennun v. Rutgers State Univ., 941 F.2d 154, 165 (3d Cir.), cert. denied, 502 U.S. 1066, 117 L. Ed. 2d 124, 112 S. Ct. 956 (1992). . . .  The ECD precludes not only claims that were brought in a previous litigation, but also related claims that could have been litigated in that previous action.   See Bernardsville Quarry v. Borough of Bernardsville, 929 F.2d 927, 930 (3d Cir.), cert. denied, 502 U.S. 861, 116 L. Ed. 2d 144, 112 S. Ct. 182 (1991); Printing Mart-Morristown v. Rosenthal, 650 F. Supp. 1444, 1447 (D.N.J. 1987), aff'd, 856 F.2d 184 (3d Cir. 1988).
>
> [D.K. v. Roseland Bd. of Educ., 903 F. Supp. 797, 800 (D.N.J. 1995).]

Further, in J.H.R. v. Board of Education of East Brunswick, 308 N.J. Super. 100, 118 n.8 (App. Div. 1998) (citations omitted), the court stated:

OAL DKT. NOS. EDU 16002-19

> . . . New Jersey's strong policy commitment to the 'Entire Controversy Doctrine' requir[es] resolution of all issues in a single litigation.  Cogdell v. Hospital Center at Orange, 116 N.J. 7, 560 A.2d 1169 (1989).  Not only have the federal courts recognized the doctrine as part of the substantive law of this State, Rycoline Products, Inc. v. C & W Unlimited, 109 F.3d 883 (3d. Cir.1997), but in an action brought pursuant to 20 U.S.C.A. §1415(e)(2) (1986), amended by 20 U.S.C.A. §1415(i)(2)(A) (Supp. 1997), the District Court held that the Entire Controversy Doctrine was applicable to a proceeding brought pursuant to 20 U.S.C.A. §1415(b) (1986), amended by 20 U.S.C.A. §1415(b), §1415(e), §1415(f) (Supp.1997).  D. K. v. Roseland Bd. of Educ., 903 F.Supp. 797 (D.N.J.1995).

The BV1 petition, which did not initially seek compensatory education, was amended to include compensatory education for the missed speech sessions required by the 2019-2020 IEP. Any claims by petitioner for additional compensatory education related to the 2018-2019 and 2019-2020 school years would arise out of the same common nucleus of operative facts as the BV1 petition.  Consequently, petitioner's attempt here to include those claims constitutes a second action which is precluded by the entire controversy doctrine.

Petitioner knew, or should have known, about the claims for compensatory education upon the filing of the BV1 petition.  Further, following petitioner's failure to initially include compensatory education in BV1, this tribunal provided ample opportunity for petitioner to raise claims for compensatory education as demonstrated by the granting of the motion to amend the petition.  Put simply, any additional claims for compensatory education related to the 2018-2019 and 2019-2020 school years are germane to the BV1 petition.

As the record in the BV1 petition remains open, I make no findings here with regard to the merits of any claim in that matter.  However, following the Brill standard, and having reviewed the parties' submissions in support of, and opposition to, the within motion for partial summary decision, I **CONCLUDE** that the entire controversy doctrine bars petitioner from bringing its claims for compensatory education for the 2018-2019 and 2019-2020 school years in the instant matter.

OAL DKT. NOS. EDU 16002-19

Based on the forgoing, it is **ORDERED** that respondent's motion for partial summary decision be and hereby is **GRANTED.**

May 13, 2021
DATE                                        **JACOB S. GERTSMAN,** ALJ t/a

JSG/nd
c: Clerk OAL-T

*State of New Jersey*

OFFICE OF ADMINISTRATIVE LAW

<u>**FINAL DECISION**</u>

OAL DKT. NO. EDS 01556-21

AGENCY DKT. NO. 2021-32438

**F.V. and M.V. on behalf of B.V.,**

        Petitioners,

                v.

**CHERRY HILL TOWNSHIP**

 **BOARD OF EDUCATION,**

        Respondent.

_____

        **Jamie Epstein,** Esq., for petitioners

        **Eric L. Harrison,** Esq., for respondent (Methfessel & Werbel, P.C., attorneys)

Record Closed: March 29, 2022          Decided:  April 6, 2022

BEFORE **SARAH G. CROWLEY,** ALJ:

<u>**STATEMENT OF THE CASE**</u>

      In this matter, petitioners F.V. and M.V. (parents), on behalf of B.V., brings an application against the respondent, Cherry Hill Township, Board of Education (CHBOE) seeking an independent educational evaluation, appropriate accommodation for remote learning and compensatory education. The issues relating to independent evaluations as well as the appropriate placement were resolved.[1]  Thus, the remaining issues in this application relate to whether the District provided a free and appropriate public education (FAPE) to the petitioner in

_____

1 After Independent evaluations were requested by the petitioners, the District filed a due petition seeking to deny same (EDS 10193-2020). Thereafter, the District agreed to provide the requested evaluations, and the petition was withdrawn. Any issues relating to the independent evaluations were addressed by a Final Decision entered by The Honorable Jeffrey N. Rabin on January 12, 2021.  Any issues related to the independent evaluations are moot and not the subject matter of the within proceeding.

the least restrictive environment (LRE) in the 2020-2021 school year, as well as compensatory education for that same school year. The issue of compensatory education for any prior years was the subject of a motion and has been dismissed.

## PROCEDURAL HISTORY

The request for due process was received by the Office of Special Education Programs (OSEP) and transmitted to the Office of Administrative Law (OAL) where it was filed as a contested case on February 2, 2021, pursuant to N.J.S.A. 52:14B-1 to 15; N.J.S.A. 52:14F-1 to 13.   The matter was assigned to the Honorable Jacob Gertsman, who took testimony in this matter on May 14, 17, and 24, 2021.  A motion for partial summary judgment clarified the scope of the within due process proceeding. On August 2, 2021, petitioner filed a motion to have Judge Gertsman recuse himself. Judge Gertsman, in consultation with Deputy Director Edward J. Delanoy, Jr., decided in an abundance of caution to transfer the matter to the undersigned to complete the case.  The final day of testimony was heard before the undersigned via ZOOM on November 1, 2021.  The respondent filed his brief on the agreed upon due date of March 15, 2022.   An extension was given to the petitioner, who filed his brief on March 29, 2022, and the record closed on that date.

## TESTIMONY AND FACTUAL FINDINGS

**Trina Ragsdale (Ragsdale)** is the supervisor of special education for CHBOE.  She oversees the delivery of special education programs in the District.  She has been employed with CHBOE for seven years, and is personally familiar with B.V.   She discussed an exchange with the parents regarding the placement of B.V. in a general education setting.  Ms. Ragsdale testified that consistent with this request and the settlement of a prior due process proceeding, B.V. was placed in a general education setting with a one-on-one aide for the 2020-2021 school year. The parents had a choice of learning virtually or returning to the classroom for the 2020-2021 school year.  The District also offered a hybrid learning option. The parents opted for virtual learning.

Ms. Ragsdale discussed the program that had been agreed upon for B.V. and the progress that B.V. had made during the 2020-2021 school year.  She discussed the time that a one-on-one aide in her classroom spent with B.V. and the time that the teacher spent with her. She testified that B.V. was making meaningful progress and receiving FAPE in the least restrictive environment through virtual learning with a one-on-one aide.  She reiterated that B.V. was assigned a one-on-one aide who provided support to B.V.   The aide is in the classroom and works with B.V. whenever the teacher is not providing a lesson or instruction.  This is consistent with what would happen if they were in person, except the aide would be sitting next to B.V. in the classroom.  However, the one-on-one aide would not be instructing B.V. at the same time as the teacher.  The aide was on hand to provide assistance whenever needed. Ragsdale stated that the documentation of the aide's involvement with B.V. is reflected within the IEP educational performance summary provided by B.V.'s teacher.   The parents declined to sign the IEP after the IEP meeting.  It was not articulated what, if any issues they had with it, but it was never signed.  Although, the IEP was not redrafted to reflect the switch to remote learning, the IEP was implemented consistent with the existing goals and objectives, and B.V. was meeting her goals and objectives and making meaningful progress during the 2020-2021 school year.

**Dr. Leanne Bernosky (Bernosky)** is the case manager for B.V.   She was qualified as an expert in general and special education.  She was involved in the preparation of the September 2020 IEP for B.V.  The IEP was changed pursuant to an agreement with the parents and their respective attorneys to place B.V. in a general education setting with a one-on-one aide. It is her practice to work with and interact with the parents when developing the IEP and goals and objectives.  However, the parents declined to participate even after the IEP was changed to reflect their request for a general education setting with a one-on-one aide.  When the students returned to school following virtual instruction during the pandemic, B.V.'s parents opted to continue virtual learning.  The students were offered the option of a full or hybrid learning in school or to remain in virtual learning full time.  The parents never indicated there was any issues related to assistive technology, and it did not appear that B.V. or the parents were having any issues.  She discussed the progress reports and the progress that B.V. was making in general education class, speech, and language therapy as well as OT and PT.  She opined that she was making meaningful progress in all areas.

Dr. Bernosky discussed the OT, PT as well as the issue of whether a Behavior Intervention Plan was appropriate for B.V., and in terms of parental assistance with technology for virtual instruction, the parents never mentioned that they were having any issues and B.V. did not appear to be struggling.   Dr. Bernosky identified and discussed the progress notes, and she opined that B.V. was making meaningful progress and that she was receiving FAPE in the LRE. The parents declined to attend the annual IEP meeting and never provided any independent evaluations.  Dr. Bernosky discussed the issue of the stay-put and what IEP was governing.  The parents had requested, and the District agreed, to a general education setting with a one-on-one aide, but they refused to sign the IEP which reflected this change.  The District followed the goals and objective in the prior IEP pursuant to the stay-put provision, but B.V. was in a general education setting with a one-on-one aide.  Dr. Bernosky opined that B.V. was making meaningful progress in the least restrictive environment.

**Renee Johnson (Johnson)** was B.V.'s classroom teacher.  She was qualified as an expert in the area of general and special education.   She has been a special education teacher for eleven years.  B.V. entered her class, via remote learning, in September 2020.  She was assigned a one-on-one aide.  She discussed the challenges of remote learning, but that all of the students including B.V., had adjusted and were making progress. Naturally, all students would perform better in person, but with the aide and herself providing one-on-one time with B.V., she had adjusted and was making meaningful progress.  She had four other remote students and spent time with each of them. She discussed B.V.'s progress and identified the narratives that she provided for Trimester 1 and Trimester 2.   She discussed the role of the one-on-one aide and how it was a little different in a remote setting.  If they were in-person, the aide would be sitting with her and working with her all the time, but with remote learning in a general education setting, B.V. needed to focus on her teacher and the class lesson on her screen and then the one-on-one aide would work with her.   Ms. Johnson also worked with B.V. on a one-on-one basis.  Ms. Johnson identified and discussed the report cards and the progress that B.V. was making.  She testified that B.V. was making meaningful progress, was meeting all of her goals and objectives, and was doing so in the least restrictive environment.

**For petitioner:**

**Dr. Mary Pipan (Pipan)** works at the Children's Hospital of Philadelphia (CHOP) and was accepted as an expert witness in Developmental Pediatrics with an expertise in down syndrome.  She conducts evaluations which are often used by child study teams. However, she was not qualified as an expert in education, IEPs, or FAPE, and does not work in a school setting.  She conducted an evaluation on B.V. on May 19, 2020, via tele-medicine. She also reviewed observations conducted and prepared by the CHBOE.  When questioned about her opinion on B.V.'s placement, she testified that B.V. would be a great candidate for a general education classroom and that is where she belonged.  She further elaborated that she would need an aide in a general education setting.  Her opinion regarding general education and a one-on-one aide was predicated on a live classroom setting, not a remote setting.  B.V. was placed in a general education setting with a one-on-one aide, but she was receiving her instruction remotely due to the pandemic.

**F.V.** is the father of B.V.   He provided a background of his family, including that of B.V.  She was part of the early intervention program in the District.  B.V. received PT, OT from six months through age three.  At the age of three, she transitioned to the Cherry Hill School District in their special educational program.  He identified the draft IEP from March 20, 2020.  He also identified the IEP that was provided following the IEP meeting which placed her in the general education setting.  They wanted her in a general education setting with a one-on-one aide.  This was the subject of a prior due process proceeding and they agreed to place her in the general education setting with a one-on-one aide.  They opted to keep her at home for virtual school.  He was present while she attended virtual school at home.  He did not think the aide spent enough time with her during virtual learning.  He did not receive any special training to assist her in remote learning and he did not ask for any training.  He did not think that she was making meaningful progress.

## FINDINGS OF FACT

It is the duty of the trier of fact to weigh each witness's credibility and make a factual finding. Credibility is the value a fact finder assigns to the testimony of a witness, and it contemplates an overall assessment of the witness's story considering its rationality,

consistency, and how it comports with other evidence.  <u>Carbo v. United States</u>, 314 F.2d 718 (9th Cir. 1963); <u>see</u>, <u>In re Polk</u>, 90 N.J. 550 (1982).  Credibility findings "are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record."  <u>State v. Locurto</u>, 157 N.J. 463 (1999).  A fact finder is expected to base decisions on credibility on his or her common sense, intuition, or experience.  <u>Barnes v. United States</u>, 412 U.S. 837 (1973).  A trier of fact may reject testimony because it is inherently incredible, or because it is inconsistent with other testimony or with common experience, or because it is overborne by other testimony.  <u>Congleton v. Pura-Tex Stone Corp.</u>, 53 N.J. Super 282, 287 (App. Div. 1958).

I found the testimony of Ragsdale, Bernosky and Johnson to be sincere, credible, and supported by documentary evidence as well as their firsthand knowledge of the progress B.V. was making.  They all testified in a manner that demonstrated their firsthand knowledge of B.V.'IEP and the implementation of same through virtual learning.  They all demonstrated a familiarity and understanding of B.V. and her placement in a general education setting in September 2020.  Their expert and factual testimony was supported by the progress reports and other documentation and demonstrated that B.V. was engaged and participated in learning and was making meaningful progress and that she was being provided FAPE in the LRE. Accordingly, I **FIND** as **FACT** that B.V. was making meaningful progress and was receiving FAPE in the LRE.

Dr. Pipan was admitted as an expert witness in Developmental Pediatrics with an expertise in down syndrome or Trisomy-21.  She was not qualified as an expert in special education, and thus, provided no testimony or expert opinion on the issue of FAPE or whether B.V. was making meaningful progress in the 2020-2021 school year.  She opined that a general education setting with a one-on-one aide would be ideal for B.V.   However, she qualified that her opinion was based on in-person instruction.  In addition, Dr. Pipan did not provide any firsthand or expert opinions as to whether B.V. was receiving FAPE, or if she was being provided FAPE in the LRE.   Accordingly, I find that her testimony has no bearing on the issue of whether B.V. was being provided FAPE in the LRE during the 2020-2021 school year.

OAL DKT. NO.  EDS 01556-21

B.V.'s father was present during virtual learning for B.V.    However, he provided no credible evidence or testimony to support the allegation that B.V. was not making meaningful progress and was not receiving FAPE in the LRE.  His opinion was that special training was needed to assist B.V. in online learning.  He did not provide any examples of what sort of training was needed, nor did he ever request any assistance or training.  Finally, he provided no evidence to support the claim that B.V. was not making any meaningful progress and was not being provided FAPE in the LRE.

Having considered the testimonial and documentary evidence presented I **FIND** the following additional **FACTS:**

1.  B.V. was placed in a general education class beginning on September 10, 2020, and provided with a one-on-one aide.
2.  This placement was predicated on the resolution of a prior due process proceeding and was agreed to by all the parties.
3.  A one-on-one aide was present and provided assistance to B.V. during remote learning in the general education placement.
4.  The teacher also provided one-on-one assistance to B.V.
5.  B.V. was present in class and needed no assistance in accessing remote learning.
5.  B.V. was making meaning progress consistent with her IEP
6.  B.V. was receiving FAPE in the LRE.

## <u>LEGAL ANALYSIS AND CONCLUSION</u>

The Individuals with Disabilities Education Act (IDEA), as amended by the Individuals with Disabilities Education Improvement Act (IDEIA), 20 U.S.C. §§ 1400-1482, provides the framework for special education in New Jersey.  It is designed "to ensure that all children with disabilities have available to them free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living."  20 U.S.C. § 1400(d)(1)(A); <u>see,</u> generally <u>Id.</u> § 1400(c), (d) (describing need for, and purposes of, the IDEA).  A state may qualify for federal funds under the

IDEA by adopting "policies and procedures to ensure that it meets" several enumerated conditions.

This Act requires that boards of education provide students between the ages of three and twenty-one who suffer from a disability, with a free appropriate public education, or FAPE. In fulfilling its FAPE obligation, the board must develop an IEP for the student, and the IEP must be reasonably calculated to confer some educational benefit.  Hendrick Hudson District Board of Education v. Rowley, 458 U.S. 176, 192, 73 L.Ed. 2d 690, 703, 102 S.Ct. 3034 (1982) (Rowley).

The Third Circuit Court of Appeals has clarified the meaning of this "educational benefit." It must be "more than trivial and must be significant" and "meaningful."  Polk v. Central Susquehanna Intermediate Unit 16, 853 F.2d 171, 180 (3rd Cir. 1988), cert. denied, 488 U.S. 1030 (1989) (Polk); Ridgewood Board of Education v. N.E., 172 F.3d 238, 247-48 (3rd Cir. 1999) (Ridgewood).  In evaluating whether a FAPE was furnished, an individual inquiry into the student's potential and educational needs must be made.  Ridgewood, 172 F.3d at 247.  In providing a student with a FAPE, a school district must provide such related services and support as are necessary to enable the disabled child to benefit from the education.  Rowley, 458 U.S. at 188-89.  If an administrative law judge finds that a district has not made FAPE available to a student who previously received special education in a timely manner prior to his enrollment in a nonpublic school, the judge may require the district to reimburse the parents for the cost of that enrollment if the private placement is appropriate.  N.J.A.C. 6A:14-2.10.

Parents who are dissatisfied with an IEP may seek an administrative due process hearing.  20 U.S.C. § 1415(f).  The burden of proof is placed on the school district.  N.J.S.A. 18A:46-1.1.  The Board will satisfy the requirement that a child with disabilities receive a FAPE by providing personalized instruction with sufficient support services to permit that child to benefit educationally from instruction.  Hendrick Hudson Cent. Sch. Dist. Bd. of Educ. v. Rowley, 458 U.S. 176, 203, 102 S. Ct. 3034, 3049, 73 L. Ed. 2d 690, 710 (1982).  To meet its obligation to deliver a FAPE, a school district must offer an IEP that is reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances.  Endrew F. v. Douglas Cnty. Sch. Dist., 580 U.S. (2017);137 S.Ct. 988; 197 L. Ed 2d 335.  In Endrew, the District Court for the District of Colorado initially upheld the school denial of a reimbursement for an out-of-district

OAL DKT. NO.  EDS 01556-21

placement.  However, the Supreme Court reversed the finding that an IEP should be appropriately ambitious in light of the child's circumstances, and "tailored to the unique needs of a particular child."

In Endrew F. v. Douglas County School District RE-1, 137 S. Ct. 988, 1001 (2017), the United States Supreme Court construed the FAPE mandate to require school districts to provide "an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."  The Court's holding in Endrew F. largely mirrored the Third Circuit's long-established FAPE standard, which requires that school districts provide an educational program that is "reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential and individual abilities."  Dunn v. Downingtown Area Sch. Dist. (In re K.D.), 904 F.3d 248, 254 (3rd Cir. 2018) [quoting Ridley Sch. Dist. v. M.R., 680 F.3d 260, 269 (3rd. Cir. 2012)].  In addressing the quantum of educational benefit, the Third Circuit has made clear that more than a "trivial" or "de minimis" educational benefit is required, and the appropriate standard is whether the IEP provides for "significant learning" and confers "meaningful benefit" to the child.  Endrew F., 137 S. Ct. at 1000–01; T.R. v. Kingwood Twp. Bd. of Educ., 205 F.3d 572, 577 (3d Cir. 2000); Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 247 (3d Cir. 1999), superseded by statute on other grounds as recognized by P.P. v. W. Chester Area Sch. Dist., 585 F.3d 727 (3d Cir. 2009); Polk v. Cent. Susquehanna Intermediate Unit 16, 853 F.2d 171, 180, 182–84 (3d Cir. 1988).  Hence, an appropriate educational program will likely "produce progress, not regression or trivial educational advancement."  Dunn, 904 F.3d at 254 (quoting Ridley, 680 F.3d at 269).

The effect of the pandemic on the requirements of FAPE and LRE is worthy of some discussion.  On or about March 15, 2020, the State of New Jersey, by Executive Order of the Governor, declared a State of Emergency due to a serious pandemic which came about due to the Covid-19 virus.  Among other things, the Order included a shutdown of all schools throughout the State, in an effort to contain the virus, and protect students, teachers, staff and parents from being exposed to others who might be carrying the virus.  Little was known at the time about the potential threat, and it was hoped that after a two-week period, that schools and the rest of the State could open up again, with minimal disruption.  Re-opening did not happen at that time, and school districts were left to develop alternate methods of

teaching through virtual instruction for the balance of the 2019-2020 school year.  This was especially challenging for teachers and students who are involved with delivering and receiving special education and related services, impacting thousands of students and families of students like B.V., who are eligible to receive these services.

Recognizing the need to address the situation, the Commissioner of Education, and the Department of Education itself, issued some modified guidelines to districts regarding the alternate method of teaching and delivering services to students, including but not limited to the ongoing obligation to offer and provide FAPE.  The directives and guidelines that came out, however, did not require districts to revise the IEPs for students receiving Special Education services.  The U.S. Department of Education (USDOE) issued a document advising local education agencies (LEAs) on how to comply with IDEA regulations during the COVID-19 public health emergency. The document was not intended to impose additional requirements on LEAs, nor act as legally binding rules, but rather to provide informal guidance of the USDOE's interpretation of the IDEA and its implementing regulations in the specific context of the COVID-19 health crisis.   US Dept. of Educ., Questions and Answers on Providing Services to Children with Disabilities During the Coronavirus Disease 2019 Outbreak, (Mar. 2020), https://sites.ed.gov/idea/files/qa-covid-19-03-12-2020.pdf.  The USDOE provided that if LEAs choose to continue providing educational opportunities to the general student population during a school closure, "the school must ensure that students with disabilities also have equal access to the same opportunities, including the provision of FAPE."  Id., at 2.  The USDOE stated that during this time schools were required to ensure that "to the greatest extent possible, each student with a disability can be provided the special education and related services identified in the student's IEP."  Ibid.

Based upon the above directives from the State of New Jersey and the US Department of Education, it is clear that services needed to be provided to special education students during these unprecedented times.   However, there was no obligation to amend every IEP based on the student's desire to return to school or continue with remote learning.  In addition, the directive from the State as well as the USDOE clearly states that the services to be provided to special education students in

OAL DKT. NO.  EDS 01556-21

remote learning was to be "to the greatest extent possible**."**   The foregoing directive recognizes that we are in unprecedented times and that the services were to be provided to the greatest extent possible and that they were to mirror what was provided to other students without disabilities.

In the matter before me, I have found as **FACT** that B.V. was making meaningful progress and was provided FAPE during the 2020-2021 school year in the LRE. I therefore **CONCLUDE** that the District has met its burden of demonstrating by a preponderance of the evidence that B.V. was properly placed in a general education classroom with a one-on-one aide and was making meaningful progress during the period in question. I further, **CONCLUDE** that B.V. was provided FAPE in the LRE.  The petitioner presented no credible evidence to dispute that B.V. was being provided FAPE in the LRE.  I further **CONCLUDE** that any issues relating to requested independent evaluations were resolved by the District agreeing to provide same and the parents failed to follow through on the offer to provide such evaluations. The issue of independent evaluations was also the subject matter of a prior Order entered by Judge Rabin.

## **ORDER**

It is therefore **ORDERED** that the petition should be and hereby is **DISMISSED** and the relief requested therein is **DENIED.**

This decision is final pursuant to 20 U.S.C. § 1415(i)(1)(A) and 34 C.F.R. § 300.514 (2021) and is appealable by filing a complaint and bringing a civil action either in the Law Division of the Superior Court of New Jersey or in a district court of the United States.  20 U.S.C. § 1415(i)(2); 34 C.F.R. § 300.516 (2021).  If the parent or adult student feels that this decision is not being fully implemented with respect to program or services, this concern should be communicated in writing to the Director, Office of Special Education.


April 6 , 2022_____
DATE

**SARAH G. CROWLEY**, ALJ


Date Received at Agency:

April 6, 2022_____

Date emailed to Parties:

_____


SGC/sm

**Pa 43**

## **APPENDIX**

### **WITNESSES**

**For Petitioners:**

      Dr. Mary Pipan

      F.V.

**For Respondent:**

      Trina Ragsdale

      Renee Johnson

      Dr.  Leanne Bernosky

### **EXHIBITS**

**For Petitioners:**

| | |
|---|---|
| P-7 | March 30, 2020, Draft IEP |
| P-8 | March 30, 2020, Final IEP |
| P-9 | Dr. Mary Pipan, CV |
| P-10 | June 26, 2020, Letter of Dr. Pipan |
| P-13 | August 31, 2020, Letter of Dr. Pipan |
| P-14 | April 26, 2021, Letter of Dr. Pipan |

**For Respondent:**

| | |
|---|---|
| R-5 | October 6, 2020, letter of petitioners requesting independent educational evaluations |
| R-6 | December 2, 2020, letter of counsel withdrawing prior due process petition, OAL Dkt. No. EDS 10193-22 |

R-7    December 11, 2020, letter of respondent's counsel to petitioners' counsel reiterating commitment to fund independent educational evaluations

R-8    January 12, 2021, final decision and OAL Dkt. No. EDS 10193-20

R-9    March 3, 2021, NJDOE broadcast "guidance regarding compensatory education determinations for students with disabilities as a result of Covid-19"

R-80   September 10, 2020, email exchange between Trina Ragsdale and parents

R-85   November 11, 2020, email of District's attorney to parents' attorney enclosing IEP meeting notice, IEP amendment consent form and a draft IEP

R-85(a) November 18, 2020, email of case manager Leanne Bernosky to petitioners with final IEP

R-88   December 20, 2020, related services progress report, marking period one

R-89   December 20, 2020, related services progress report, marking period two

R-95   February 9, 2021, email of case manager Leanne Bernosky to parents

R-96   February 11, 2021, email of parents to Ms. Bernosky

R-97   February 17, 2021, email of Ms. Bernosky to parents

R-98   February 19, 2021, email of parents to Ms. Bernosky

R-99   February 27, 2021, parental declination of in-person education

R-100  March 9, 2021, email of parents to Bernosky

R-101  March 10, 2021, invitation for annual review of IEP

R-102  Progress report for second marking period

R-103  Report card, first and second marking periods

R-104  Spring 2021 running record information

R-105  Kindergarten ELA assessment materials

R-107(a) Dr. Leanne Bernosky, CV

R-107(b) Renee Johnson, CV