EXHIBIT  A

*State of New Jersey*

OFFICE OF ADMINISTRATIVE LAW

**FINAL DECISION**

OAL DKT. NO. EDS 06354-20

AGENCY DKT. NO. 2020-31711

**F.V. and M.V. on behalf of B.V.,**[1]

    Petitioners,

        v.

**CHERRY HILL TOWNSHIP BOARD**

**OF EDUCATION, CAMDEN COUNTY,**

    Respondent.

_____

**Jamie Epstein,** Esq., for petitioners

**Eric L. Harrison,** Esq., for respondent (Methfessel & Werbel, P.C., attorneys)[2]

Record Closed: June 11, 2021        Decided:  June 17, 2021

BEFORE **JACOB S. GERTSMAN,** ALJ:

**STATEMENT OF THE CASE**

    In this matter, Petitioners F.V. and M.V. (Parents), on behalf of B.V., bring an application seeking placement in an inclusion class with a 1:1 aide, against respondent, the Cherry Hill Township Board of Education (CHBOE or District).  The District asserts that it has provided B.V. with the relief requested and therefore the matter is moot.

---

[1]  By order dated December 3, 2021, the caption in the instant matter was amended in order to further protect the parents' privacy.

[2]  Mr. Harrison was preceded in this matter representing the CHBOE by Shifra Tarica, Esq., and Robin Ballard Esq.

OAL DKT. NO. EDS 06354-20

## PROCEDURAL HISTORY

The request for due process was received by the Office of Special Education Programs (OSEP) on June 9, 2020.  The matter was transmitted to the Office of Administrative Law (OAL) where it was filed as a contested case on July 9, 2020, pursuant to N.J.S.A. 52:14B-1 to 15; N.J.S.A. 52:14F-1 to 13 and assigned to the undersigned.  On July 9, 2020, petitioners filed an application for emergent relief with the Office of Administrative Law, which was also assigned to the undersigned.  The parties presented oral argument on the emergent relief application on July 15, 2020, via Zoom Video Communications, Inc. (Zoom).

The emergent relief was granted by order dated July 16, 2020, which stated:

> In the instant matter, it is not in dispute that respondent must provide services to B.V. based upon the 2019-2020 IEP. Notwithstanding this agreement, the parties have failed to resolve this matter, which undoubtedly could have been effectuated through greater communication, or by the scheduling of the required speech services by CHBOE.  Unfortunately, neither has occurred.  Therefore, as the record does not reflect whether the speech services have in fact been provided to B.V. for the ESY period that commenced on July 6, 2020, I **CONCLUDE** that CHBOE has not provided the services to B.V. as specified in the stay-put 2019-2020 IEP.  I further **CONCLUDE** that the 2019-2020 IEP shall remain as stay-put during the pendency of this proceeding.

The undersigned conducted the first telephone hearing in the instant matter on July 17, 2020, and additional hearing dates were scheduled for August 20 and 31, 2020, and September 9, 10, and 11, 2020.  By letter dated August 13, 2020, CHBOE sought an adjournment of the August 20 and 31, 2020, hearing dates.  The adjournment was granted over petitioners' objection on August 17, 2020.  In a letter to the parties detailing my rationale for granting CHBOE's request, I stated in part,

OAL DKT. NO. EDS 06354-20

> [t]he District, along with all districts in New Jersey and throughout our country, is faced with an unprecedented task in the coming weeks as it prepares for the September opening of schools in the midst of the ongoing COVID-19 pandemic. Accordingly, as these preparations, along with Ms. Weathington's family obligation, have made her unavailable on August 20 and 31, 2020, I am granting the District's request for adjournment of those hearing dates.

However, I added that "[w]hile I am mindful that the operation of schools in this environment is a daunting challenge, the IDEA intends that due process matters be heard expeditiously. 34 C.F.R. §300.515(a). As the need and obligation to proceed with the hearing is clear, no further adjournments will be granted."

Prior to the commencement of the September 9, 2020, hearing, the parties advised the undersigned that they wished to engage in an attempt to reach a resolution in this matter. Following lengthy discussions presided over by a settlement judge, the parties reached an agreement which was then entered into the record. However, the parties notified the undersigned on October 2, 2020, that they were unable to complete the settlement. On October 2, 2020, petitioners filed a motion to enforce the settlement which was opposed by the CHBOE. In the midst of oral argument on the motion conducted via telephone on October 21, 2020, petitioners withdrew the motion. However, petitioners' motion to amend the pleadings, filed on July 21, 2020, and opposed by CHBOE, and previously tabled by the undersigned, was granted on the record during that same hearing. Petitioners sought the following relief in the amended petition:

> The parents request that the [d]istrict provide services based on [B.V.'s] stay-put 19-20 IEP, for both the ESY 2020 term, as well as the 2020-2021 term. The parents request the [d]istrict provide makeup sessions for any services they failed to provide as required by the stay-put IEP.

At the conclusion of the hearing, the parties agreed to, and the undersigned scheduled, new hearing dates for December 11, 2020, January 4, 2021, and February 8 and 12, 2021.

OAL DKT. NO. EDS 06354-20

On November 4, 2020, CHBOE filed a motion to dismiss the matter contending that the relief sought in the petition was moot.  Petitioners filed its opposition, along with a revival of its previously withdrawn motion to enforce the settlement, on December 2, 2020.  The District filed its response to petitioners and its opposition to the revived motion later on December 2, 2020.

At the December 11, 2020, hearing, the undersigned denied petitioners' motion to enforce the settlement.  CHBOE's motion was deferred in order for respondent's witnesses to testify and I further noted that the motion would be revisited after respondent's case was completed.  The parties then proceeded with their opening statements.  Additional hearings were held via Zoom on January 4 and February 8, 2021, and via telephone on February 12, 2021.  Following the completion of respondent's case on January 4, 2021, CHBOE's motion was denied.

Post hearing briefs were due on March 15, 2021, and an additional telephone hearing was scheduled for March 19, 2021.  By letter dated March 10, 2021, the parties jointly requested that the briefing schedule be suspended in order to have this matter, along with a separate matter involving the same parties which has also been assigned to the undersigned (F.V. and M.V. o/b/o B.V. v. Cherry Hill Twp BOE, OAL Docket Number 01556-2021) referred to a settlement judge in order to engage in global settlement discussions.  On March 25, 2021, petitioners informed the undersigned that there was no reasonable expectation of a settlement and requested a new due date for post hearing submissions.  During a telephone hearing held on March 29, 2021, a new deadline of April 26, 2021, was set for post hearing submissions and a telephone hearing was scheduled for May 18, 2021.

CHBOE's brief was timely filed, however, petitioners failed to do so.  On April 28, 2021, during the second business day following the deadline for the submission and having heard nothing from petitioners' counsel, my judicial assistant sent an email at my direction instructing counsel for petitioners to notify my chambers on the status of his submission.  Counsel was further notified that a request for an extension of the deadline would additionally need to be filed.  After the close of business on April 28, 2021, my chambers received a letter from counsel for petitioners stating that he "was away and just saw your email" and requesting additional time.  In an email to the parties from my chambers, the parties were informed that an extension of the deadline for the

OAL DKT. NO. EDS 06354-20

post-hearing brief would also necessitate a rescheduling of the May 18, 2021, telephone hearing. Counsel was directed to resubmit his request and indicate if he had the District's consent.

On April 30, 2021, petitioners' counsel submitted a revised submission which failed to address all issues raised by the undersigned. Counsel was directed to submit a revised response no later than 11:00 a.m. Following a subsequent submission by counsel, the parties were notified via email from my chambers that based on that submission, it was clear petitioners' counsel was requesting an extension of the April 26, 2020, deadline to submit his post-hearing brief to Monday May 3, 2021, and an adjournment of the telephone hearing scheduled for May 18, 2021. As CHBOE consented, both requests were granted. The undersigned scheduled a telephone hearing for June 11, 2021.

Petitioners subsequently sought an additional extension until May 5, 2021, which was granted, and the summation was received on that date. A telephone hearing was held on June 11, 2021, and the record closed.

## **FACTUAL DISCUSSION AND FINDINGS**

The following facts are not in dispute, and I **SO FIND.** B.V., who is six years old, resides with her family in Cherry Hill and is currently enrolled in kindergarten in the Cherry Hill School District. B.V., who has Down syndrome, is eligible for special education and related services under the category of "communication impaired." Prior to kindergarten, during the 2019-2020 school year, B.V. was eligible for special education and related services under the category of "preschool child with a disability" and was placed in a self-contained setting. (R-1.)

OAL DKT. NO. EDS 06354-20

## **TESTIMONY**[3]

**Trina Ragsdale (Ragsdale),** is the supervisor of special education for CHBOE.  She oversees the delivery of special education programs within eight of the District's schools, consisting of over 3,000 students, and is personally familiar with B.V.

She reviewed the petition for due process and testified that the District wanted to be collaborative and thought the District could provide what the parents were asking for, placement in a general education setting with an aide.  She described a "self-contained setting" as where a special education teacher provides the level of instruction required by the student, and the students within that classroom are all classified.  Additionally, she understood that in May 2020, petitioners wanted B.V. to be placed in a general education setting.

Ragsdale provided the background of B.V.'s IEPs utilized for preschool and proposed for kindergarten.  The IEP developed in the Spring of 2019 by the preschool child study team for B.V.'s 2019-2020 school year proposed placement in a self-contained preschool half-day program for B.V. for the 2019-2020 school year.  B.V. did attend this program for the 2019-2020 school year.  (R-1.)  The IEP developed in March 2020 by the preschool child study team for B.V.'s 2020-2021 school year recommended placement in a special class mild to moderate language and learning disabilities, which is a self-contained program.  (R-2.)

Regarding the missed speech lessons, Ragsdale emailed the parents on July 9, 2020, stating that the District was "willing to make up the two individual speech lessons that were missed."  (R-3.)  She was copied on the July 22, 2020, email from the parents to B.V.'s speech therapist, Kathleen Mullee, indicating that their attorney would be handling the scheduling of additional speech sessions to compensate for the two missed sessions.  (R-4.)  When questioned as to what prompted this email, she noted that in her conversation with Mullee she stated that "we were following the stay-put IEP and -- B.V. was entitled to make-up sessions that

---

[3]  As further discussed in the legal analysis, both Ragsdale and Pipan were questioned, over the objection of the CHBOE, on issues that were not included in either the original petition or the amended petition.  Accordingly, that testimony will not be summarized.

OAL DKT. NO. EDS 06354-20

were missed as reported by parents to schedule those makeup sessions.  And, so she was directed to contact parents to schedule those make up sessions."  (TT1 17: 14-20.)[4]  To date, the parents have not responded directly to Ragsdale. However, they reiterated in an October 5, 2020, email to  B.V.'s counselor Lynda Slimm, that the rescheduling of the speech sessions would be handled by their attorney.  (R-5.)

Ragsdale testified that B.V. was ultimately placed in a general education setting with a 1:1 aide.

> [M]y direction to the Team, once we, you know, understood what the parents were seeking and again, in an attempt to be collaborative and working with the family and wanting to resolve the matter, we agreed to place B.V. in a general education setting and the Team at the elementary school was informed that she should be placed in a general education classroom with an aide.
>
> (TT1 19: 23-35, 20: 1-5.)

The first day of B.V.'s placement was September 10, 2020.  Further, the attendance records (R-6) indicate that prior to that date, B.V. did not attend the general education class with a 1:1 aide for the two days that schools were open.

Finally, the finalized IEP described the program that B.V. had been receiving since September 10, 2020.  The related services placed in this finalized IEP were of the same type, frequency and duration as the related services in B.V.'s IEP for the prior 2019-2020 school year, with the only addition being the 1:1 aide.  (R-1, R-11.)  When Ragsdale was asked why the 1:1 aide was added, she responded "[b]ecause that's what the parents requested, that's what they asked for."  (TT1 32:13-14).

On cross-examination, when questioned as to the existence of expert reports and whether a general education setting was considered as a placement for B.V., Ragsdale explained that the team relies on the reports completed by the child study team. She added that

---

[4]   Hereinafter, "TT1" shall refer to the transcript of the January 4, 2021, hearing.

OAL DKT. NO. EDS 06354-20

at the time of the testimony, B.V. was attending school via virtual learning.[5]  She reiterated that B.V. is assigned a 1:1 aide who provides support which is reflected in B.V.'s progress reports.

On re-direct, Ragsdale stated that the documentation of the 1:1 aide's involvement with B.V. is reflected within the IEP educational performance summary provided by B.V.'s kindergarten teacher on or about November 17, 2020.  (R-11 at 6.)

On re-cross-examination, Ragsdale stated this is the proposed IEP which accurately reflects B.V.'s current program.  However, the parents had not consented to the IEP.

**Dr. Mary Pipan (Pipan),** the program director of the Trisomy 21 Program at the Children's Hospital of Philadelphia (CHOP), was accepted as an expert witness in Developmental Pediatrics with an expertise in Down Syndrome or Trisomy-21.

She identified a letter she wrote on August 31, 2020, (P-13) after an in-person evaluation she performed on B.V. on August 27, 2020, "about advocating for her needs within the school system and within the educational system."  (TT2 12:14-14.)[6]  By way of background, Pipan sees children from infancy to adulthood with Trisomy-21 and monitors their medical, developmental, behavior, educational, and mental health issues so that they may flourish and grow into adulthood as able as they can. B.V. was a patient of her clinic on a regular basis. B.V.'s evaluation

> [c]onsisted of observing her behavior throughout the visit, including her attentiveness to others, her attention her cooperation, her compliance.  I assessed her screener for her – I assessed her speech through the pre-school language skill five screener to follow her progress along across time and also reviewed her parents ratings of her attention and focus and then her ability to draw the test vision of motor integration is a test that our occupational therapist performed as well.  Then I also talked with the OT and PT about their impressions as well about their observations.
>
> (TT1 14:6-17.)

---

[5]   At the time of Ragsdale's testimony, the Cherry Hill School District was operating remotely.

[6]   Hereinafter, "TT2" shall refer to the transcript of the February 8, 2021, hearing.

OAL DKT. NO. EDS 06354-20

She also reviewed observations conducted and prepared by the CHBOE.  When questioned about her opinion on B.V.'s placement, she testified that "[o]ur opinion as, you know, from the Trisomy 21 clinic including the OT and PT input and my observations is that she would be a great candidate for a general education classroom and that's where she belonged."  (TT2 17:14-18.)

Finally, Pipan recommended a 1:1 aide.  She elaborated that

> I think in a small structured in general ed environment, for example a private school setting that may have ten or eleven kids per classroom.  She may not need an aide, but in a regular ed classroom she would need an aide and the aide is there to basically, one, for safety, for example taking her places within the school that she may have to go for example to therapies or to use the facilities.  The other would be to facilitate interaction and engagement with peers.  Thirdly to adapt the curriculum to meet her needs and fourth would be to carry over the lessons that she's learning in therapies into her gen ed classroom environment.

> (TT2 19:12-24.)

The District had no cross-examination for Pipan.

**F.V.** is the father of B.V.  He provided a background of his family, including that B.V. attends kindergarten in a general education classroom, and has a male twin who is not classified to receive special education.  F.V. further noted B.V. received services through New Jersey's early intervention program and discussed B.V.'s placement history in the District's preschool program during the 2017-2018 and 2018-2019 school years.

B.V. attended the District's 2019 extended school year program, which provided programming three hours a day, four days a week, for four weeks.  For the 2019-2020 school year, B.V. again attended the half-day self-contained preschool program.

The parents would have liked B.V. to be placed in the general education setting for eighty percent or more of the day for the 2019-2020 school year for kindergarten.  However,

OAL DKT. NO. EDS 06354-20

the proposed IEP (P-3), which they rejected, called for B.V. to have exposure to the general education setting for less than forty percent of the day.  Another meeting was scheduled to discuss the parent's request for a general education placement which focused on B.V.'s performance at school.  F.V. testified that "about twenty-five to thirty minutes into the meeting the team at the school decided that the meeting was going to end, and they were going to send us the latest version of the IEP and if we needed to file for due process that would need to be the next step."  (TT2 69: 13-18.)

The extended school year for 2020 was conducted virtually due to the pandemic.  B.V. began the 2020-2021 school year in a self-contained class and she was placed in what F.V. referred to as a "temporary placement" in a general education remote class.  (TT2 92:8-9.) F.V. testified that he provided assistance to B.V. during the remote instruction.

Currently B.V. receives two physical therapy sessions per week for twenty-five minutes each, two occupational therapy sessions per week for twenty-five minutes each, and four speech sessions per week (two for twenty minutes each and two for ten minutes each.  When asked if there was a 1:1 aide for B.V. in the general education class, he responded that "[t]here was a classroom aide, but nobody made us aware that there was a one on one aide specifically assigned to work with B."  (TT2 108:19-21.)  He added that there was no remote interaction between B.V. and the classroom aide who was supposed to be B.V.'s aide.

On cross-examination F.V. stated that B.V. missed two speech sessions.  When asked why he did not schedule the make-up speech lessons himself, he testified that he retained an attorney.  He admitted that of the fifteen to seventeen children in B.V.'s classroom, several have parents assisting them during remote instruction.

## **FINDINGS OF FACT**

It is the duty of the trier of fact to weigh each witness's credibility and make a factual finding. Credibility is the value a fact finder assigns to the testimony of a witness, and it contemplates an overall assessment of the witness's story considering its rationality, consistency, and how it

OAL DKT. NO. EDS 06354-20

comports with other evidence.  Carbo v. United States, 314 F.2d 718 (9th Cir. 1963); see, In re Polk, 90 N.J. 550 (1982).  Credibility findings "are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record."  State v. Locurto, 157 N.J. 463 (1999).  A fact finder is expected to base decisions on credibility on his or her common sense, intuition or experience.  Barnes v. United States, 412 U.S. 837 (1973).  A trier of fact may reject testimony because it is inherently incredible, or because it is inconsistent with other testimony or with common experience, or because it is overborne by other testimony.  Congleton v. Pura-Tex Stone Corp., 53 N.J. Super 282, 287 (App. Div. 1958).

I deem Ragsdale's testimony to be credible.  She testified in a manner that demonstrated her professionalism and thorough understanding of the issues.  Further, her testimony was calm, clear, direct, and consistent with the record.  It is not in dispute that B.V. was placed in a general education setting in September 2020, as requested by the parents.  In fact, F.V. testified on direct examination that B.V. was in a general education setting, notwithstanding the fact that he characterized it as a "temporary placement."  Ragsdale's testimony, supported by B.V.'s attendance records (R-6), demonstrates that this placement occurred on September 10, 2020.  Further, her testimony that she directed her team to place B.V. in a general education setting with a 1:1 aide (TT1 19: 23-35, 20: 1-5) is supported by the IEP educational performance summary provided by B.V.'s Kindergarten teacher on or about November 17, 2020, which states "[B.V.] participates in remote instruction in her general education kindergarten class with educational one-on-one assistance."  (R-11 at 6.)

I additionally deem Dr. Pipan, who was admitted as an expert witness in Developmental Pediatrics with an expertise in Down Syndrome or Trisomy-21, but not in special education, a credible witness solely regarding her testimony related to the contents of her report.  Dr. Pipan also testified in a professional and calm manner and explained the rationale for her opinions.  It should be noted that CHBOE does not challenge Pipan's report or her recommendation.  However, as noted in the summary of her testimony, and which is further addressed in the legal analysis, her testimony relating to how a 1:1 aide should assist B.V., as opposed to whether B.V. should have a

OAL DKT. NO. EDS 06354-20

1:1 aide, is not relevant to the instant matter as those issues were not raised in the petition for due process. Accordingly, I make no findings to her credibility on that testimony.

F.V. has demonstrated that he is a dedicated and devoted parent to B.V. However, his testimony that "nobody made us aware that there was a one on one aide specifically assigned to work with B" (TT2 108:19-21), is not believable as it is inconsistent with the documentary evidence in the record (R-11), along with Ragsdale's credible testimony. Accordingly, I deem his testimony on that issue not credible.

Having considered the testimonial and documentary evidence presented I **FIND** the following additional **FACTS:**

There is no dispute that that B.V. was placed in a general education class beginning on September 10, 2020. (R-6.) F.V.'s testimony does not dispute that this placement occurred. (TT2 92:8-9.) Petitioners' sole argument rests on their naked assertion that the District presented no evidence that B.V. was receiving a 1:1 aide, [Petitioners' Post Hearing Brief (Petitioners' Brief) at 8] which is wholly unsupported by the record. CHBOE has presented documentary evidence, consistent with Ragsdale's credible testimony, that B.V. has a 1:1 aide. (R-11.) Accordingly, B.V.'s placement in a general education setting that began on September 10, 2020, included a 1:1 aide. Further, the related services placed in the finalized IEP were of the same type, frequency, and duration as the related services in B.V.'s IEP for the prior 2019-2020 school year, with the only addition being the 1:1 aide. (R-1, R-11.)

## <u>LEGAL ANALYSIS AND CONCLUSION</u>

The Individuals with Disabilities Education Act (IDEA), as amended by the Individuals with Disabilities Education Improvement Act (IDEIA), 20 U.S.C. §§ 1400-1482, provides the framework for special education in New Jersey. It is designed "to ensure that all children with disabilities have available to them free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A); <u>see</u>, generally <u>Id.</u> § 1400(c), (d) (describing need for, and

OAL DKT. NO. EDS 06354-20

purposes of, the IDEA).  A state may qualify for federal funds under the IDEA by adopting "policies and procedures to ensure that it meets" several enumerated conditions.

This Act requires that boards of education provide students between the ages of three and twenty-one who suffer from a disability with a free appropriate public education, or FAPE.  In fulfilling its FAPE obligation, the Board must develop an IEP for the student, and the IEP must be reasonably calculated to confer some educational benefit.  Hendrick Hudson District Board of Education v. Rowley, 458 U.S. 176, 192, 73 L.Ed. 2d 690, 703, 102 S.Ct. 3034 (1982) (Rowley). The Third Circuit Court of Appeals has clarified the meaning of this "educational benefit."  It must be "more than trivial and must be significant" and "meaningful."  Polk v. Central Susquehanna Intermediate Unit 16, 853 F.2d 171, 180 (3rd Cir. 1988), cert. denied, 488 U.S. 1030 (1989) (Polk); Ridgewood Board of Education v. N.E., 172 F.3d 238, 247-48 (3rd Cir. 1999) (Ridgewood).  In evaluating whether a FAPE was furnished, an individual inquiry into the student's potential and educational needs must be made.  Ridgewood, 172 F.3d at 247.  In providing a student with a FAPE, a school district must provide such related services and supports as are necessary to enable the disabled child to benefit from the education.  Rowley, 458 U.S. at 188-89.  If an administrative law judge finds that a district has not made FAPE available to a student who previously received special education in a timely manner prior to his enrollment in a nonpublic school, the judge may require the district to reimburse the parents for the cost of that enrollment if the private placement is appropriate.  N.J.A.C. 6A:14-2.10.

Parents who are dissatisfied with an IEP may seek an administrative due-process hearing. 20 U.S.C.A. § 1415(f).  The burden of proof is placed on the school district.  N.J.S.A. 18A:46-1.1. The Board will satisfy the requirement that a child with disabilities receive a FAPE by providing personalized instruction with sufficient support services to permit that child to benefit educationally from instruction.  Hendrick Hudson Cent. Sch. Dist. Bd. of Educ. v. Rowley, 458 U.S. 176, 203, 102 S. Ct. 3034, 3049, 73 L. Ed. 2d 690, 710 (1982).  To meet its obligation to deliver a FAPE, a school district must offer an IEP that is reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances.  Endrew F. v. Douglas Cnty. Sch. Dist., 580 U.S. (2017);137 S.Ct. 988; 197 L. Ed 2d 335.  In Endrew, the District Court for the District of Colorado initially upheld the school denial of a reimbursement for an out of district placement.  However, the

OAL DKT. NO. EDS 06354-20

Supreme Court reversed finding that an IEP should be appropriately ambitious in light of the child's circumstances, and "tailored to the unique needs of a particular child."

In <u>Endrew F. v. Douglas County School District RE-1</u>, 137 S. Ct. 988, 1001 (2017), the United States Supreme Court construed the FAPE mandate to require school districts to provide "an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."  The Court's holding in <u>Endrew F.</u> largely mirrored the Third Circuit's long-established FAPE standard, which requires that school districts provide an educational program that is "reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential and individual abilities." <u>Dunn v. Downingtown Area Sch. Dist. (In re K.D.)</u>, 904 F.3d 248, 254 (3rd Cir. 2018) [quoting <u>Ridley Sch. Dist. v. M.R.</u>, 680 F.3d 260, 269 (3rd. Cir. 2012)].  In addressing the quantum of educational benefit, the Third Circuit has made clear that more than a "trivial" or "de minimis" educational benefit is required, and the appropriate standard is whether the IEP provides for "significant learning" and confers "meaningful benefit" to the child.  <u>Endrew F.</u>, 137 S. Ct. at 1000–01; <u>T.R. v. Kingwood Twp. Bd. of Educ.</u>, 205 F.3d 572, 577 (3d Cir. 2000); <u>Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.</u>, 172 F.3d 238, 247 (3d Cir. 1999), <u>superseded by statute on other grounds as recognized by</u> <u>P.P. v. W. Chester Area Sch. Dist.</u>, 585 F.3d 727 (3d Cir. 2009); <u>Polk v. Cent. Susquehanna Intermediate Unit 16</u>, 853 F.2d 171, 180, 182–84 (3d Cir. 1988).  Hence, an appropriate educational program will likely "produce progress, not regression or trivial educational advancement."  <u>Dunn</u>, 904 F.3d at 254 (quoting <u>Ridley</u>, 680 F.3d at 269).

The District reiterated in its brief that Ragsdale and Pipan were permitted to testify to issues beyond the scope of the amended petition.  Specifically, on cross-examination, Ragsdale was questioned about the "mode and manner of services delivered to B.V. in the virtual learning setting during a period of pandemic-related building closures, such as B.V.'s receipt of assistance from a 1:1 aide, and whether the virtual program provided B.V. with a free and appropriate public education."  [District Post Hearing Brief (District Brief) at 12.]  Additionally, Dr. Pipan was permitted to testify beyond the scope of her report with respect to "her opinion as to how a 1:1 aide should assist B.V. as opposed to whether B.V. should have a 1:1 aide."  (<u>Id.</u> at 16.)

OAL DKT. NO. EDS 06354-20

CHBOE argues that "[t]his Court in the context of this case does not have jurisdiction to address any additional claims and/or requests for relief that exceed the scope of the issues set forth in the original petition and the amended petition." N.J.A.C. 1:1-3.2(a); N.J.A.C. 1:1-3.2(b). (District Brief at 26.) I agree. It is evident that petitioners failed to raise these issues in either the petition for due process or in the amended petition that I granted over the objection of CHBOE. Further, the District accurately states that these issues were raised by petitioners in the separate matter involving the parties (F.V. and M.V. o/b/o B.V. v. Cherry Hill Twp BOE, OAL Docket Number 01556-2021), that has not been consolidated with the instant matter. (Id. at 28.) Accordingly, I **CONCLUDE** that the issues to be resolved here are solely those set forth in the petition and the amended petition.

In addressing those issues, the District renews its argument that the matter is moot, stating that "[t]he relief requested in both petitions has been provided, with the exception of the makeup speech sessions whose delivery the Petitioners have declined to accept. There exists no active case or controversy." (District Brief at 34.)

An action is considered moot when it no longer presents a justiciable controversy, and the conflict between the parties has become merely hypothetical. In re Conroy, 190 N.J. Super. 453, 458 (App. Div. 1983). A case is considered "'moot' when the decision sought . . . can have no practical effect on the existing controversy." Greenfield v. N.J. Dep't of Corr., 382 N.J. Super. 254, 257-58 (App. Div. 2006).

In P.S. ex rel. I.S. v. Edgewater Park Township Board of Education, EDS 10418-04, Final Decision (October 31, 2005), http://njlaw.rutgers.edu/collections/oal/, a parent filed for due process due to a disagreement over her District's proposed placement of her child, and requested a different, approved private school. The District had agreed to the parent's placement request and moved to dismiss the petition as moot due to the same. The parent wanted to continue the hearing to resolve other disagreements she had over the program that would be provided to the child at her requested placement. The administrative law judge (ALJ) concluded that the relief sought by the parent had already been granted by the District through their agreement to place the child at

OAL DKT. NO. EDS 06354-20

her requested school.  The ALJ dismissed the petition as moot and reasoned that the parents had the right to file a new due process petition regarding other issues with the District.

While the District's motion for dismissal was denied at the close of its case, upon review of the complete record, the issue of whether the District has in fact provided the relief sought by petitioners remains.

Dr. Pipan provided unchallenged testimony regarding the recommendation in her report that B.V. be placed in a general education setting with a 1:1 aide.  Here, while the CHBOE did not initially place B.V. based upon that recommendation, which led to the parents filing the petition for due process, the District does not dispute that this placement is appropriate.  However, the record plainly demonstrates Dr. Pipan's recommendation was implemented beginning on September 10, 2020.  (R-6, R-11.)

Further, the District argues that "[a]s for the relief sought in the second petition – 'that the District provide services based on [B.V.'s] stay-put 19-20 IEP, for both the ESY 2020 term, as well as the 2020-2021 term' – the District has provided related services in the same frequency and duration set forth in her 2019-2020 IEP.  The demands in both petitions have been satisfied." (District Brief at 30.)  The record demonstrates that this is the case.  (R-1, R-11.)

B.V. was placed in a general education setting with a 1:1 aide beginning on September 10, 2020.  Further, the District has provided related services to B.V. in the same frequency and duration set forth in her 2019-2020 IEP.  With regard to the missed speech sessions, it is inexplicable that this issue, which the District sought to rectify on July 9, 2020, (R-3) and was addressed in my order granting the motion for emergent relief on July 16, 2020, some eleven months ago, remains unresolved.  CHBOE remains willing to schedule the make-up speech sessions, (District Brief at 32) and the parents have refused to accept the offer, instead referring the matter to counsel.  (R-4, R-5.)  While petitioners are well withing their rights to communicate with the District through counsel, their failure to accept the offer to schedule the make-up sessions, and to then argue to this tribunal that they are entitled to the awarding of these same sessions as compensatory education, (Petitioners' Brief at 15) turns logic on its head.  Put simply, in order to receive the make-

OAL DKT. NO. EDS 06354-20

up speech sessions for B.V., all the parents have to do is accept CHBOE's offer.  I **CONCLUDE** that their failure to do so does not render this a live controversy.

Based on the forgoing, I **CONCUDE** that the District has provided petitioners with the relief sought in both the petition and the amended petition.  I **FURTHER CONCLUDE** that a controversy no longer exists, meaning this case has become moot.

## ORDER

It is **ORDERED** that the petition should be and hereby is **DENIED.**

This decision is final pursuant to 20 U.S.C. § 1415(i)(1)(A) and 34 C.F.R. § 300.514 (2019) and is appealable by filing a complaint and bringing a civil action either in the Law Division of the Superior Court of New Jersey or in a district court of the United States.  20 U.S.C. § 1415(i)(2); 34 C.F.R. § 300.516 (2019).


June 17, 2021
DATE                                        **JACOB S. GERTSMAN**, ALJ

Date Received at Agency:              June 17, 2021

Date emailed to Parties:              June 17, 2021 (emailed)


JSG/nd

OAL DKT. NO. EDS 06354-20

## APPENDIX

## WITNESSES

**For Petitioners:**

Dr. Mary Pipan

F.V.

**For Respondent:**

Trina Ragsdale

## EXHIBITS

**For Petitioners:**

P-1    IEP, dated April 18, 2019

P-2    Speech and Language Evaluation, Barclay Early Childhood Center, dated January 31, 2020

P-3    Child Study Team Evaluation, Psychological Report, Cherry Hill, New Jersey, dated February 11, 2020

P-4    Confidential Learning Re-evaluation/Observation, Cherry Hill Public Schools, Office of Special Education and Student Services, dated February 24 2020

P-5    Individual Child Report, dated March 9, 2020

P-6    Progress Report, dated March 9, 2020

P-7    Consent to Implement Initial IEP form, Cherry Hill Public School District

P-8    IEP 2020-2021 Meeting Agreement, dated March 30, 2020

P-9    Mary Pipan, MD, Curriculum vitae

P-10   Letter from Mary Pipan, MD, Clinical Director, Trisomy 21 Program, Report, dated June 26, 2020

P-11   Email from petitioners to Michelle Giambrone, Summer and Fall Education Plan, dated June 30, 2020

P-12   Email from Kathleen Mullee to petitioners, ESY Speech Therapy, dated July 1, 2020

OAL DKT. NO. EDS 06354-20

P-13   Mary Pipan, MD, Clinical Director, Trisomy 21 Program, Addendum, Children's Hospital of Philadelphia, Division of Developmental and Behavioral Pediatrics, dated August 31, 2020

**For Respondent:**

R-1   IEP, dated April 18, 2019

R-2   IEP, dated March 30, 2020

R-3   Email from Trina Ragsdale, Supervisor of Special Education, Cherry Hill Public School District, to petitioners, regarding ESY speech services and stay-put, dated July 9, 2020

R-4   Email from petitioners to Kathleen Mullee, copied to Trina Ragsdale, regarding speech therapy, dated July 22, 2020

R-5   Email from petitioners to Lynda Slimm, copied to Trina Scott regarding declining makeup session 1, dated October 5, 2020

R-6   Attendance Records

R-7   IEP for the School Year 2020-2021, dated October 27, 2020

R-8   Request to Amend an IEP without a Meeting, dated October 26, 2020

R-9   Invitation to Assess Progress and Review or Revise IEP, dated October 29, 2020

R-10   Exhibit Not Admitted

R-11   Email from Leanne Bernosky, Ed.D; NCED, Learning Disability Teacher Consultant, Case Manager, to petitioners, finalized IEP, prior written notice; consent page; and two attendance pages, dated November 18, 2020

# EXHIBIT  B

JAMIE EPSTEIN, ESQ. - BAR ID. 008081990
17 Fleetwood Drive, Hamilton, New Jersey 08690
496 Kings Hwy, N. Suite 220D, Cherry Hill, NJ. 08034
Telephone:856.979.9925, EMAIL: JE@JamieEpsteinLaw.com
Attorney for Respondents

| F.V. & M.V., individually and on behalf of B.V.[1], The V.s, <br><br> v. <br><br> CHERRY HILL TOWNSHIP BOARD OF EDUCATION <br><br> Defendants | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: CAMDEN COUNTY DOCKET NO. CAM-L-002823-21 CIVIL ACTION <br><br> **FIRST AMENDED VERIFIED COMPLAINT** |
|---|---|

The V.s, by way of Complaint say:

## PARTIES

1.     The V.s are B.V., an infant, her father, FV and her mother, MV, ("Vs").

2.     B.V. was born in October, 2014 and according to her Individual Education Plan (IEP) is eligible for special education and related services pursuant to the Individuals with Disabilities Education Act (IDEA) under the category of Communications Impaired because she suffers from numerous disabilities.

3.     The V.s are domiciled within the geographic boundaries of the Township of Cherry Hill, County of Camden and State of New Jersey.

4.     At all relevant times, Defendant, Cherry Hill Public School District, (hereinafter referred to as BOE), is located at 45 Ranoldo Terrace, Cherry Hill, New Jersey 08034., is a "Local Educational Authority" as defined by 20 U.S.C. §1401(a) and responsible for ensuring compliance with all federal and state mandates applicable to school aged students, like B.V., residing in the Township of Cherry Hill, County of Camden and State of New Jersey.

---

1 The V.s are using fictitious initials to protect the plaintiff/student's right to confidentiality of the plaintiff/student's records under state and federal law which are the subject of civil action. The *Federal Family Educational Rights and Privacy Act of 1974* (FERPA), 20 U.S.C.S. § 1232g, *New Jersey Pupil Records Act*, N.J.S.A. § 18A:36-19, *L.R. v. Camden City Pub. Sch. Dist.*, 452 N.J. Super. 56, 86 (NJAD 2017) ("to safeguard the reasonable privacy interests of parents and students against the opposing interests of third parties who may seek access to their student records ")

1

## JURISDICTION AND VENUE

5.      Jurisdiction is proper because the BOE  has its principal place of business within Camden County, New Jersey.

6.      Venue is properly laid in Camden County. R. 4:3-2(a).

## FACTS

7.      B.V is a disabled minor who was entitled to receive a free and appropriate public education (FAPE) in the Least Restrictive Environment (LRE) from the BOE under the IDEA.

8.      On 5/9/20, the V.s filed an administrative complaint with the State of New Jersey against the BOE for their failure to offer B.V. a FAPE in the LRE for the 2020-21 school year, including, but not limited to, unnecessarily segregating B.V. away from her non-disabled peers.

9.      On 7/9/20, the V.s filed a Request for Emergency Relief claiming the BOE failed to comply with B.V.'s stay-put IEP that called for speech twice a week during the extended school year period.

10.     On 7/16/20, the State of New Jersey issued a Final Order on the Request for Emergency Relief in the Vs favor. (attached)

11.     On 6/17/21, the State of New Jersey issued a Final Order on the 5/9/20 Petition. (attached)

12.     The Vs incurred attorney's fees and costs in the administrative actions.

## COUNT 1 – THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA)

13.     The Vs hereby repeat and incorporate by reference the proceeding paragraphs of this Verified Complaint.

14.     The Vs are prevailing parties on the 7/16/20 Final Order.

15.     The Vs are aggrieved by and appeal the 6/17/21 Final Order on the 5/9/20 Petition under IDEA. 20 U.S.C. §1415(i)(2)

2

WHEREFORE, the Vs demand judgment:

    A.    Reversing the 6/17/21 Final Order; and

    B.    Awarding all appropriate relief; and

    C.    Finding the Vs are prevailing party in the administrative actions and in this civil actions.

    D.    Awarding the Vs reasonable attorney's fees and costs against The BOE;

### COUNT 2.    NEW JERSEY LAW AGAINST DISCRIMINATION (NJLAD)

16.    The V.s hereby repeat and incorporate by reference the proceeding paragraphs of this Verified Complaint.

17.    The New Jersey Law Against Discrimination (NJLAD) protects persons with disabilities, like B.V., from discrimination based on her protected class. *N.J.S.A.* 10:5-4.

18.    Under NJLAD, the school district operated by the BOE is considered "a place of public accommodation". *N.J.S.A.* 10:5-5(l).

19.    B.V. is a handicapped person. *N.J.S.A.* 10:5-5(q).

20.    The BOE violated B.V.'s rights under the NJLAD by "refusing, withholding from or denying B.V., either directly or indirectly, on account of that person's disability or perceived disability, access to any accommodations, advantages, facilities or privileges of a place of public accommodation ... and to discriminate against a person with a disability in the price, eligibility criteria, methods of administration, standards, terms, or conditions upon which access to such accommodations, advantages, facilities, or privileges may depend." *N.J.A.C.* 13:13-4.3(a).

23.    The V.s engaged in a protected activity and suffered an adverse action at the hands of the the BOE in the pursuit of her education and the adverse harm suffered by the V.s. was, at minimum, causally linked, to the BOE's actions or omissions. *N.J.S.A.* 10:5-12(d) and (e).

**WHEREFORE,** Plaintiff demands judgment against the BOE as follows:

a. Compensatory and consequential damages:

b. Reasonable attorney's fees and costs;

c. Enhancement to the attorney fee award; and

d. Such other relief as the Court deems just.

Respectfully submitted,

JAMIE EPSTEIN, ESQ.
Dated: 9/15/21

## DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates Jamie Epstein as trial counsel.

## CERTIFICATION PURSUANT TO R. 1:38-7(B)

I certify that confidential personal identifiers have been redacted from documents

now submitted to the Court, and will be redacted from all documents submitted in the future.

## CERTIFICATION OF NO OTHER ACTIONS

Pursuant to R. 4:5-1, it is hereby stated that the matter in controversy is not the

subject of any other action pending in any other court or of a pending arbitration proceeding to the

best of my knowledge and belief. To the best of my belief, no other action or arbitration proceeding

is pending or contemplated. Further, other than the parties set forth in this pleading, I know of no

other parties that should be joined in the above action. In addition, I recognize the continuing

obligation of each party to file and serve on all parties and the Court an amended certification if

there is a change in the facts stated in this original certification.

## CERTIFICATION OF OTHER ACTIONS AND PARTIES

Pursuant to R. 4:5-1(b) of the New Jersey Court Rules, the undersigned hereby certifies that the

4

matter in controversy is not the subject of any other action pending in any court or of a pending

arbitration proceeding. No other action or arbitration proceeding is contemplated, other than, if

applicable to this case, UM/UIM arbitration. The undersigned does not know of the names of any other

parties who should be joined in the action or who are subject to joinder.

I certify on this 15th' day of September, 2021, the foregoing statements made by me are true and

that if the statements are willfully false or misleading, I understand that I am subject to punishment.

*F.V./s*

F.V., Plaintiff

5



**State of New Jersey**
OFFICE OF ADMINISTRATIVE LAW

**FINAL DECISION**
**ON EMERGENT RELIEF**
OAL DKT. NO. EDS 06254-20
AGENCY DKT. NO. 2020-31711

■V. and ■.V. ON BEHALF OF B.V.,

    Petitioners,

        v.

**CHERRY HILL TOWNSHIP BOARD**
**OF EDUCATION, CAMDEN COUNTY,**

    Respondent.

---

    **Jamie Epstein,** Esq., for petitioners

    **Robin S. Ballard,** Esq., for respondent (Schenk, Price, Smith & King LLC, attorneys)

Record Closed:  July 15, 2020        Decided:  July 16, 2020

BEFORE **JACOB S. GERTSMAN,** ALJ t/a:

## STATEMENT OF THE CASE

    In this matter, Petitioners B.V. and B.V. (Parents) bring an application for emergent relief against the Cherry Hill Township Board of Education (CHBOE) on behalf of minor student B.V., asserting that respondent had failed to provide services based on the stay-put 2019-2020

OAL DKT. NO. EDS 06354-20

Individualized Education Program (IEP).  Respondent concedes that the services should be provided based on the stay-put 2019-20 IEP which renders the request for emergent relief moot.

## PROCEDURAL HISTORY

On July 9, 2020, petitioner filed an application for emergent relief with the Office of Administrative Law. [1]  The parties presented oral argument on the emergent relief application on July 15, 2020 via Zoom Video Communications, Inc.

## FACTUAL DISCUSSION AND FINDINGS

For purposes of deciding this request for emergent relief, the following pertinent facts which form the basis for the determination herein, are not in dispute.  B.V. was born on October 31, 2014, and is classified as eligible for special education and related services under the category of Communication Impaired.  She completed the 2019-2020 school year as a pre-school student with a disability and will enter kindergarten in September of 2020.  An IEP was proposed by CHBOE for 2020-2021 for B.V. which was not agreed to by the parents.[2]

The extended school year (ESY) program commenced on July 6, 2020.  The parents contacted B.V.'s case manager, Michelle Giambrone (Giambrone) via electronic mail on June 30, 2020 (Petitioner's Request for Emergent Relief at 3), seeking confirmation that B.V. would receive services based on the stay-put from the 2019-2020 IEP.  Giambrone replied by electronic mail dated July 1, 2020 that "services will reflect what was written in the 19-20 IEP," however, she listed the services reflected in the proposed 2020-2021 IEP, which provided fewer services for B.V.  Id. at 4.  Petitioners responded to Giambrone by electronic mail later on July 1, 2020, advising her of her error.  Id. at 5.  Giambrone replied shortly thereafter advising that "[s]ervices will reflect the 20-21 IEP for summer ESY programs and services."  Id. at 6.  Following the filing the instant Request for Emergent Relief, Trina Ragsdale (Ragsdale), the Supervisor of Pupil Services, contacted petitioners via electronic mail on July 9, 2020, stating the following:

---

[1] Petitioners' underlying due process was previously filed with the Office of Special Education Policy and Dispute Resolution (SPDR or Department) and transmitted to the OAL.

[2] The subsequent mediation failed to resolve the dispute which subsequently led to the filing of petitioners' due process petition.

OAL DKT. NO. EDS 06354-20

> Please excuse any confusion, to clarify, ESY speech services as listed in the 19-20 stay put IEP will be followed. We are willing to make up the two individual speech sessions that were missed. Feel free to contact me with any questions.
>
> (Respondent's Opposition to Request for Emergent Relief at Exhibit 1.)

At oral argument, petitioners claimed that while B.V. has already received one speech for the week beginning on July 13, 2020, a second one has yet to be scheduled. CHBOE was unable to confirm if a second session has in fact been scheduled, but did not dispute that stay-put based upon the 2019-2020 IEP remains in effect.

## LEGAL ANALYSIS AND CONCLUSION

The regulations governing controversies and disputes before the Commissioner of Education provide that "[w]here the subject matter of the controversy is a particular course of action by a district board of education . . . the petitioner may include with the petition of appeal, a separate motion for emergent relief or a stay of that action pending the Commissioner's final decision in the contested case." N.J.A.C. 6A:3-1.6(a). The regulations further provide that the Commissioner may "[t]ransmit the motion to the OAL for immediate hearing on the motion." N.J.A.C. 6A:3-1.6(c)(3).

At such a hearing, the petitioner must show that he or she satisfies the following four standards:

1. The petitioner will suffer irreparable harm if the requested relief is not granted;

2. The legal right underlying petitioner's claim is settled;

3. The petitioner has a likelihood of prevailing on the merits of the underlying claim; and

4. When the equities and interests of the parties are balanced, the petitioner will suffer greater harm than the respondent will suffer if the requested relief is not granted.

3

OAL DKT. NO. EDS 06354-20

In a matter involving the application of stay-put, however, petitioner is not required to meet the above test. Rather, the stay-put acts as an automatic statutory injunction against any attempt to change a student's placement from that which is in effect at the time the parents invoke the dispute-resolution procedures embodied in state and federal law. Drinker v. Colonial Sch. Dist., 78 F.3rd 859, 864 (3d Cir. 1996).

The "stay-put" provision of the Individuals with Disabilities Education Act (IDEA) provides in pertinent part:

> [D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents agree otherwise, the child shall remain in the then-current educational placement of the child.
>
> [20 U.S.C.A. § 1415(j).]

Furthermore, pursuant to the New Jersey Administrative Code, no changes are to be made to a child's classification, program or placement unless emergency relief is granted. N.J.A.C. 6A:14-2.7(u) specifically provides:

> Pending the outcome of a due-process hearing, including an expedited due-process hearing, or any administrative or judicial proceeding, no change shall be made to the student's classification, program or placement unless both parties agree, or emergency relief as part of a request for a due-process hearing is granted by the Office of Administrative Law according to (m) above or as provided in 20 U.S.C. §1415(k)4 as amended and supplemented.

The "stay-put" provision acts as an automatic preliminary injunction, the overarching purpose of which is to prevent a school district from unilaterally changing a disabled student's placement. See, Drinker, 78 F.3d at 864. In terms of the applicable standard review, the emergent-relief factors set forth in N.J.A.C. 6A:14-2.7(r)-(s), N.J.A.C. 1:6A-12.1, and Crowe v. DeGioia, 90 N.J. 126, 132-43 (1982), are generally inapplicable to enforce the "stay-put" provision. As stated in Pardini v. Allegheny Intermediate Unit, 420 F.3d, 188 (3d Cir. 2005), "Congress has already balanced the competing harms as well as the competing equities."

OAL DKT. NO. EDS 06354-20

In <u>Drinker</u> the Court explained:

> [T]he [IDEA] substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a . . . balance of hardships.
>
> [<u>Drinker</u>, 78 F.3d at 864 (citations omitted).]

In other words, if the "stay-put" provision applies, injunctive relief is available without the traditional showing of irreparable hard. <u>Ringwood Bd. of Educ. v. K.H.J. ex rel K.F.J.</u>, 469 F. Supp. 2d 267 (D.N.J. 2006). Under those circumstances, it becomes the duty of the court to ascertain and enforce the "then-current educational placement" of the handicapped student. <u>Drinker</u>, 78 F.3d at 865.

The purpose of "stay-put" is to maintain stability and continuity for the student. The first preference for interim placement is one agreed to by the parties. However, when the parties are unable to agree, the placement in effect when the due process request was made, i.e., the last uncontroverted placement or program, is the status quo. In the instant matter, it is not in dispute that respondent must provide services to B.V. based upon the 2019-2020 IEP. Notwithstanding this agreement, the parties have failed to resolve this matter, which undoubtedly could have been effectuated through greater communication, or by the scheduling of the required speech services by CHBOE. Unfortunately, neither has occurred. Therefore, as the record does not reflect whether the speech services have in fact been provided to B.V. for the ESY period that commenced on July 6, 2020, I **CONCLUDE** that CHBOE has not provided the services to B.V. as specified in the stay-put 2019-2020 IEP. I further **CONCLUDE** that the 2019-2020 IEP shall remain as stay-put during the pendency of this proceeding.

## ORDER

It is **ORDERED** that the 2019-2020 IEP shall remain as stay-put during the pendency of this proceeding.

OAL DKT. NO. EDS 06354-20

It is Further **ORDERED** that this tribunal shall reserve a finding on the remaining issues set forth in the due process petition until after the hearing in this matter has been completed.

This decision on application for emergency relief shall remain in effect until the issuance of the decision on the merits in this matter.  If petitioner feels that this decision is not being fully implemented with respect to program or services, this concern should be communicated in writing to the Director, Office of Special Education Programs.

July 16, 2020
DATE

**JACOB S. GERTSMAN**, ALJ t/a

Date Received at Agency:          July 16, 2020

Date Mailed to Parties:          July 16, 2020

JSG/nd

6

EXHIBIT   C



**METHFESSEL & WERBEL**
A Professional Corporation

JOEL N. WERBEL>
JOHN METHFESSEL, JR.>
FREDRIC PAUL GALLIN*+^
STEPHEN R. KATZMAN#
WILLIAM S. BLOOM>*
ERIC L. HARRISON*+
MATTHEW A. WERBEL>
LORI BROWN STERNBACK*+
I. BLAKELEY JOHNSTONE,III+*
GINA M. STANZIALE>
PAUL J. ENDLER JR.>

Of Counsel
MARC DEMBLING*+
ED THORNTON>

Retired
JOHN METHFESSEL, SR.>
(1935-2017)
DON CROWLEY*+

Counsel
CHRISTIAN R. BAILLIE+
SARAH K. DELAHANT+
SHAJI M. EAPEN+
JAMES FOXEN^
GERALD KAPLAN>
JARED P. KINGSLEY*+
JOHN R. KNODEL˙*
LESLIE A. KOCH+
CHARLES T. MCCOOK, JR.*>
MARC G. MUCCIOLO>
RICHARD A. NELKE~
STEVEN K. PARNESS+
RAINA M. PITTS^
BRENT R. POHLMAN+
AMANDA J. SAWYER^
JARED S. SCHURE>
SHIFRA TARICA^

Associates
EDWARD D. DEMBLING>
NATALIE DONIS+
MICHAEL R. EATROFF>
FRANK J. KEENAN+^
SCOTT KETTERER>

Associates, Cont'd
ALLISON M. KOENKE>
OLIVIA R. LICATA+
ASHLEY E. MALANDRE^
ANTHONY J. MANCUSO>
CHRISTEN E. MCCULLOUGH^
KAJAL J. PATEL>
NABILA SAEED^
SARAH E. SHEPP+
TIFFANY D. TAGARELLI>
STEVEN A. UNTERBURGER+
LEVI E. UPDYKE+^

* Certified by the Supreme Court of
  New Jersey as a Civil Trial Attorney
+Member of NY & NJ Bar
^Member of PA & NJ Bar
>Member of NJ Bar only
#Member of NJ & LA. Bar
<Member of NJ & DC Bar
≥Member of NJ, PA & DC Bar
~Member of NY, NJ & DC Bar

**Please reply to New Jersey**

January 25, 2021

VIA EMAIL: nancy.demling@oal.nj.gov
Honorable Jacob Gertsman, A.L.J.
Office of Administrative Law - Quakerbridge
Quakerbridge Plaza - Building 9
Quakerbridge Road
Trenton, NJ 08619

RE:     **F.V. AND M.V. O/B/O B.V. VS. CHERRY HILL BOE**
        Our File No.        :    89347 ELH
        OAL Docket No.      :    EDS 06354-2020 S
        Agency Ref. No.     :    2020-31711
        Next Hearing Date   :    February 8, 2021

Dear Judge Gertsman:

I write in response to Mr. Epstein's emailed letter and brief of January 15, 2021 seeking permission to share Ms. Ragsdale's hearing testimony with Dr. Pipan. The District also requests an advance ruling on our evidentiary objections to Dr. Pipan's testimony. While this correspondence is somewhat lengthy, we would suggest that consideration and resolution of these issues prior to our next hearing date is likely to streamline that hearing day and reduce the need for any additional hearing dates.

Methfessel & Werbel, Esqs.
Our File No. 89347 ELH
Page 2

At the close of the first day of testimony, I advised the Court and counsel that I intend to object to testimony from Dr. Pipan and I suggested - out of consideration for the Petitioners who presumably would have to pay a fee to Dr. Pipan to testify - that it would make sense to address these objections in advance of the next hearing date.  While the Court was not inclined to do so at the time I raised the issue, we respectfully suggest that this issue merits an evidentiary ruling before we reconvene in two weeks.

- ■ **The Relief Sought in the Petition of May 2020 and the Amended Petition of July 2020**

The Petition filed by the Petitioners on May 8, 2020 concludes with the following summary of Petitioners' position and request for relief:

In summary, we believe the IEP and placement proposed by the school district relies far too heavily on standardized tests, which are admittedly not fully appropriate for young children of Brooke's age, and further does not take fairly take into account Brooke's Down Syndrome diagnosis, her current academic performance within the normal range, her meeting her current IEP goals, and her unique individual experience with typical developing children in a wide variety of settings.  Any fears the school district has expressed regarding transitioning are completely unjustified as well, and there is enough evidence to prove they have even considered recommending a placement of inclusion for Brooke.  Therefore, we believe Brooke's case requires further investigation and formally request a change in her placement into an inclusion classroom setting for her kindergarten school year.

In support of this request, the Petitioners attached Dr. Pipan's letter of April 24, 2020, which stated as follows:

Methfessel & Werbel, Esqs.
Our File No. 89347 ELH
Page 3

> It is my recommendation that Brooke's primary classroom setting for kindergarten be in a mainstream class with a 1:1 aide. In my experience children similar to Brooke who exhibit mild delays in development, do better socially, communicatively and academically in mainstream settings. Brooke should be included with typical children for most of her school day. A learning support or resource room can be utilized when more individualized instruction without distraction is required. Physical, Occupation and Speech therapies should be both push in and individual depending on the skills needed.
>
> Children with Down Syndrome gain academic, social and communication skills more effectively when around typical children who serve as role models for appropriate behavior and for acquisition of new skills.

(May 8, 2020 Petition and Enclosure, **Exhibit A**)

The Amended Petition filed by Mr. Epstein on July 9, 2020 concludes with the following request for relief:

> 3. Please provide a description of how this problem could be resolved. Attach additional sheets as needed:
>
> The parents request that the district provide services based on Brooke's 19-20 stay-put IEP, for both the ESY 2020 term, as well as the 2020-2021 term. The parents request the district provide make-up sessions for any services they failed to provide as required by the stay-put IEP.

(July 9, 2020 Amended Petition, **Exhibit B**)

The Certifications and attachments submitted in support of the District's motion for summary decision demonstrated that it has provided the relief sought in the original Petition and that it has sought to provide the relief sought in the Amended Petition, which the Petitioners have thwarted by responding that the two or three make-up speech sessions B.V. is owed should be scheduled through their attorney. Mr. Epstein has made no effort to cooperate with the District's efforts to reschedule the two or three missed speech sessions – presumably because working

Methfessel & Werbel, Esqs.
Our File No. 89347 ELH
Page 4

collaboratively to ensure that the Petitioners receive the relief they have requested could jeopardize his efforts to obtain an order from Your Honor compelling such relief, thereby potentially frustrating his claim for attorney fees as a "prevailing party."

Although our motion for summary decision was timely filed and fully briefed, the Court deferred ruling on the motion for summary decision on the basis that it wished to hear testimony. Thereafter, following the testimony of the District's sole witness on the first hearing date, the Court orally denied the motion on the basis that the Court wishes to hear evidence about the B.V.'s 1:1 aide during the 2020-2021 school year.

- **■ Petitioners' New Petition, Filed on January 18, 2021 and Assigned Agency Reference Number 2021-32438**

On January 18, 2021 Petitioners filed a new petition with the NJDOE seeking additional relief for alleged denials of appropriate educational services during the 2019-2020 and 2020-2021 school years. A copy of that new petition, which seeks compensatory services based in part on the assertions that B.V. has been deprived of FAPE because virtual learning has been inadequate and because B.V. allegedly has not received the services of a 1:1 aide this year, is annexed hereto as **Exhibit C**.

The new petition – which has not yet been transmitted to the Office of Administrative Law – seeks the following relief:

Methfessel & Werbel, Esqs.
Our File No. 89347 ELH
Page 5

WHEREFORE, Respondent has violated B.V.'s rights under IDEA, Section 504 of the
Rehabilitation Act, and the American's with Disabilities Act, accordingly B.V. demands the following
relief:

    A.    Declare: Respondent: [1] impeded B.V.'s right to a free appropriate public education
and/or; [2] significantly impeded B.V.'s opportunity to participate in the decision making process
regarding the provision of a free appropriate public education; and/or [3] caused a deprivation of
educational benefit resulting in a denial of FAPE and in violation of B.V.'s rights under IDEA, 504 and
ADA; and/or;

    B.    Declare: Respondent failed to provide B.V. with a free and appropriate education in the
least restrictive environment so that B.V. could make progress based on B.V.'s unique circumstances.

    C.    Declare: As a result of Respondent's remote learning placement and program for B.V.,
Respondent failed to provide B.V. with a free and appropriate education in the least restrictive
environment so that B.V. could make progress based on B.V.'s unique circumstances.

    D.    Order: Respondent to provide B.V. all appropriate prospective and compensatory relief,
including the Independent Educational Evaluation referred to in the Petition.

    E.    Order: Respondent to provide B.V. all appropriate accommodations for B.V.'s
disabilities.

    F.    Order: Declare all administrative claims exhausted and all civil claims against
Respondent and its Board Members, Administrators, Employees and Agents, in their individual
capacities reserved.

**(Exhibit C)**

To date Mr. Epstein has not permitted his clients to engage in a
resolution session with the District as required by N.J.A.C. 6A:14-2.7(h).
Hopefully he will do so.  Either way, because the Petitioners filed a new

Methfessel & Werbel, Esqs.
Our File No. 89347 ELH
Page 6

petition rather than seeking leave to file another amended petition in this case, neither the issues asserted nor the relief sought in the new petition are presently before the OAL.

- ■ **Petitioners' Request to Share Ms. Ragsdale's Testimony with Dr. Pipan and Respondent's Objection to Dr. Pipan's Testimony as Irrelevant**

While we respectfully disagree with this Court's denial of our motion for summary decision on the basis of mootness, because the hearing is scheduled to continue and the Petitioners have indicated an intention to call Dr. Pipan on the next hearing date, we now turn to her proposed testimony in hopes of obtaining an advance decision on its admissibility.

In addition to the letter accompanying the original petition of May 8, 2020, Dr. Pipan authored a report on June 26, 2020 to which Mr. Epstein referred in Petitioners' five day disclosures in setting forth the projected subject matter of Dr. Pipan's testimony.  Attached as **Exhibit D** are Petitioners' disclosures; attached as **Exhibit E** is the June 26, 2020 report to which they refer.  (This report is also **Petitioners' Hearing Exhibit 10**.)

Subsequently Dr. Pipan authored a supplemental report of August 31, 2020, annexed hereto as **Exhibit F**.  (This report is also **Petitioners' Hearing Exhibit 13**.)

Dr. Pipan's reports and the literature attached to them eloquently advocate for B.V.'s placement in the mainstream setting where, subsequent to both reports' issuance, B.V. has been placed. As the District

Methfessel & Werbel, Esqs.
Our File No. 89347 ELH
Page 7

has accepted Dr. Pipan's expert opinion and has provided the relief she recommends, any testimony from Dr. Pipan would be unnecessary and duplicative.

Rule of Evidence 704 provides that "the facts or data . . . . which form the basis of an expert's opinion . . . may be made known to the expert at or before the proceeding." The facts in support of the opinions expressed in Dr. Pipan's reports were made known to her by the Petitioners and B.V. before the report was issued, and the testimony of Ms. Ragsdale has presented no new facts or data relevant to the opinions expressed therein.

Rule of Evidence 401 defines relevant evidence as "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." Dr. Pipan's expert opinion, as expressed in the reports on which Petitioners rely, does not meet this definition – not because her expert opinion is flawed but, to the contrary, because the District has accepted it and has provided the relief sought by the Petitioners based on her recommendations.

The basis of our objection to Mr. Epstein sharing Ms. Ragsdale's testimony with Dr. Pipan is the same as the basis for our objection to her testifying at all: this is not a case in which expert opinion is relevant, as the Respondent has affirmatively accepted the opinion of the Petitioners' expert and has provided the Petitioners with the precise relief they have sought.

Methfessel & Werbel, Esqs.
Our File No. 89347 ELH
Page 8

Dr. Pipan had the benefit of all the information on which her opinion is based when she wrote the reports on which Petitioners rely. This opinion has not been challenged by the District. As such, any new information elicited during Ms. Ragsdale's lay testimony could not have any possible relevance to the issues addressed in Dr. Pipan's report, to whose confines Dr. Pipan is limited by the rules of evidence and due process.

Supervisor of Special Services Trina Ragsdale – who was offered as the District's sole witness – was not offered as an expert witness; nor did she attempt to offer expert testimony in conflict with Dr. Pipan's opinion. Rather, Ms. Ragsdale testified to facts that she had previously recounted in her Certification in support of our motion for summary decision based on mootness: the District accepted Dr. Pipan's opinion and the parents' request, placing B.V. in a general education kindergarten classroom with a 1:1 aide on the third day of school.

Had Ms. Ragsdale expressed an expert opinion contrary to that expressed in either of Dr. Pipan's reports then we would have no objection to a transcript or recording of Ms. Ragsdale's testimony being provided to Dr. Pipan, as it would streamline Dr. Pipan's testimony and give her an opportunity to respond to the precise views articulated by an opposing expert. Yet that did not occur; Ms. Ragsdale testified solely to events that have occurred ***after*** Dr. Pipan issued her last report of August 2020. Had

Methfessel & Werbel, Esqs.
Our File No. 89347 ELH
Page 9

those events included an effort to move B.V. back to a more restrictive setting, for example, then Ms. Ragsdale's testimony might be relevant because it would render Dr. Pipan's opinion relevant to the final disposition of the case.

This has not occurred.  The District has continued B.V. in the precise placement requested by B.V.'s parents based on Dr. Pipan's recommendation.  As such, there is no legitimate reason for Ms. Ragsdale's testimony to be shared with Dr. Pipan.

- ■ **The Law Confining Expert Witnesses to the Opinions Expressed in their Reports or Set Forth in Five Day Disclosures**

Should the Court disagree with our argument that Dr. Pipan has no relevant testimony to offer, her testimony must be confined to the issues raised in her reports of June 26, 2020 and August 31, 2020.

Parties to a special education dispute are governed by specific pre-hearing and hearing rules established by the IDEA's procedural safeguards, rather than traditional court rules.  The parties do not engage in formal discovery procedures such as depositions or interrogatories and instead rely solely on an informal exchange of information prior to the hearing. See 20 U.S.C. §1415 (f); C.F.R. 300.512. In implementing these rules on behalf of our state educational agency, this Court requires the parties to disclose "any documentary evidence and summaries of testimony intended to be introduced at the hearing." N.J.A.C. 1:6A-10.1(c).

Methfessel & Werbel, Esqs.
Our File No. 89347 ELH
Page 10

Moreover, "[u]pon application of a party, the judge shall exclude any evidence at hearing that has not been disclosed to that party at least five business days before the hearing, unless the judge determines that the evidence could not reasonably have been disclosed within that time." N.J.A.C. 1:6A-10.1(d); See also Prehearing Order.

In this case, Petitioners' disclosures indicated that Dr. Pipan "may be called to testify as an expert based on her report (Pa-106) based on her expertise as described in her attached C.V. (Pa-96)." As such, if Dr. Pipan is permitted to testify as an expert witness by Petitioners, her testimony may not exceed the scope of her testimony summary and/or the contents of the report referenced therein.

Based on a few of Mr. Epstein's cross-examination questions of Ms. Ragsdale and the Court's denial of summary decision on the basis that it wishes to hear more about the involvement of a 1:1 aide in B.V.'s education during the 2020-2021 school year – an issue we did not address in our case in chief because it was not raised in the petition - we presume that Mr. Epstein intends to present testimony from Dr. Pipan addressing matters outside the scope of this litigation and outside the scope of her report. The petition filed on January 18, 2021, for example, seeks a declaration and relief to address an alleged deprivation of FAPE on account of distance learning and insufficient involvement of a 1:1 aide during the COVID-19 pandemic. (**Exhibit C**) Neither the original petition filed in May

Methfessel & Werbel, Esqs.
Our File No. 89347 ELH
Page 11

2020 nor the amended petition filed by Mr. Epstein in July 2020 contains any allegations or claims relating to these issues.  Nor does either of Dr. Pipan's reports.

Should the Court permit Dr. Pipan to testify, Petitioners should not be permitted to present testimony beyond the scope of their disclosures, which incorporate by reference Dr. Pipan's prior reports. See N.J.A.C. 1:6A-10.1(c); 20 U.S.C. §1415 (f); C.F.R. 300.512. See also L.J. v. Audubon Bd. Of Educ., 2008 U.S. Dist. LEXIS 71122, (affirming ALJ's decision to exclude any evidence that had not been disclosed to the other party at least five days before the hearing). See also Ratner v. General Motors Corp., 241 N.J. Super. 197, 202 (App. Div. 1990); Mauro v. Raymark Indus., Inc.,116 N.J. 126, 145 (1989) (upholding exclusion of expert testimony on a subject not covered in the expert's written reports).

Neither of the petitions at play in this hearing asserts that remote learning has deprived B.V. of a free, appropriate public education.  Neither petition seeks compensatory education.  Dr. Pipan's June and August 2020 reports contain no opinion regarding the remote instruction provided to B.V. during the COVID-19 pandemic or how B.V.'s 1:1 aide should conduct him/herself when providing remote education to B.V. during virtual learning.  As such, it would be violative of N.J.A.C. 1:6A-10.1(c); 20 U.S.C. §1415 (f); C.F.R. 300.512, an abuse of discretion and a denial of due process to the District to permit Dr. Pipan to testify regarding such

Methfessel & Werbel, Esqs.
Our File No. 89347 ELH
Page 12

issues, or any other issues not addressed in her reports of June and August 2020.  As the opinions in those reports are not disputed for purposes of this litigation and B.V. has received the placement she has recommended, testimony from Dr. Pipan should be precluded altogether. (Lest Mr. Epstein claim that he would require admission into the evidentiary record of Dr. Pipan's reports for purposes of a complete record on appeal, we would have no objection to both of the reports, along with her CV, being entered into evidence.)

We appreciate the Court's consideration of this submission, in response to which we request a ruling in advance of the hearing presently scheduled to continue on February 8, 2021.

Respectfully,

**METHFESSEL & WERBEL, ESQS.**

Eric L. Harrison
harrison@methwerb.com
Ext. 138

ELH:jml
Enc. (Exhibits A-F)

cc:  VIA EMAIL: JE@JamieEpsteinLaw.com
Jamie Epstein, Esq.
17 Fleetwood Drive
Hamilton, NJ 08690

EXHIBIT  D



### *State of New Jersey*
OFFICE OF ADMINISTRATIVE LAW

**B.V. AND B.V. ON BEHALF OF B.V.,**                    **PREHEARING ORDER**

     Petitioners,                                        OAL DKT. NO. EDS 06354-20

        v.                                           AGENCY DKT. NO. 2020-31711

**CHERRY HILL TOWNSHIP BOARD**

**OF EDUCATION, CAMDEN COUNTY,**

     Respondent.

_____

     Pursuant to N.J.A.C. 1:1-13.1, a dial-in telephonic hearing conference was held in the above-entitled matter on August 7, 2020, and the following procedures were settled:

1. **NATURE OF PROCEEDING AND ISSUES TO BE RESOLVED**

   The hearing shall be limited to the issues raised in the pleadings.  The due process petition raises the following issues for adjudication:  Petitioners on behalf of student seek placement in an inclusion class with a 1:1 aide.

2. **PARTIES AND THEIR DESIGNATED ATTORNEYS OR REPRESENTATIVES**

3.

   **For Petitioners:**                           **For Respondent:**
   Jamie Epstein, Esq.                          Shifra Tarica, Esq.
   Attorney at Law                              Methfessel & Werbel, P.C.
   17 Fleetwood Drive                           2025 Lincoln Highway, Suite 200
   Hamilton, NJ 08690                           P.O. Box 3012
   (856) 979-9925                               Edison, NJ 08818
   Email:  je@jamieepsteinlaw.com               (732)-650-6532/ Fax (732)-248-2355
                                                Email:  tarica@methwerb.com

     No change in designated trial counsel shall be made without leave of the administrative law judge if such change will interfere with the date for hearing.

OAL DKT. NOS. EDS 06354-20

**3.**   **SCHEDULE OF HEARING DATES, TIME AND PLACE**

Plenary hearings are scheduled for **August 20 and 31, and September 9, 10 and 11, 2020, at 9:00 a.m.,** via Zoom Video Communications.  No adjournments will be granted except in strict accordance with the requirements of N.J.A.C. 1:1-9.6, N.J.A.C. 1:6A-9.2 and 34 C.F.R. 300.515(c) and upon a showing of good cause.

**4.**   **STIPULATIONS**

Counsel will confer and stipulate to the admissibility of as many documents as possible.  Such documents will typically include much of the contents of the student's school file; such as IEPs, evaluations, notices of meetings, and other correspondence. All such documents will be prepared into one or more, as needed, evidence binder(s) with numbered joint exhibit designations (J-1, J-2, etc.).  A table of contents shall be prepared and presented with the binder(s) on the first hearing date, as well as electronically delivered to me.  Use of the "J" designation merely evidences counsels' agreement that the document is authentic and relevant.  Counsel retains the right to challenge any facts set forth in a particular document, or elaborate on or clarify the content of any document through testimony.

No party will be precluded from seeking to use and/or admit additional documents at the hearing.  The parents shall use petitioner (P-1, P-2, etc.) designations and the Board of Education shall use respondent (R-1, R-2, etc.) designations.

In light of the requirements above, the judge will anticipate <u>not</u> receiving duplicate documents; any documents that appear in both petitioner's and respondent's evidence binder should have been included in the joint exhibit binder.

**5.**   **SETTLEMENT**

If a settlement is reached prior to the hearing, immediate notice should be forwarded to the judge, followed by a stipulation of settlement or agreement signed by all parties and containing the terms of settlement to be included in a Final Decision Approving Settlement.

OAL DKT. NOS. EDS 06354-20

## 6.   <u>DISCOVERY AND DATE FOR COMPLETION</u>

Each party shall disclose to the other party any documentary evidence and summaries of testimony intended to be introduced at the hearing.  This exchange of information shall be completed no later than five business days prior to the commencement of the hearing. Upon application of a party, the judge shall exclude any evidence at hearing that has not been disclosed to that party at least five business days before the hearing, unless the judge determines that the evidence could not reasonably have been disclosed within that time.  <u>See</u>, N.J.A.C. 1:6A-10.1.

Any discovery concerns will be informally and immediately brought to the attention of the judge via a request for a telephone conference, but in no event later than four business days prior to the start of the hearing.

<u>All expert reports must be produced five business days prior to the commencement of the hearing.  Any reports not so produced will be excluded.</u>

## 7.   <u>ORDER AND PRESENTATION OF PROOFS:</u>

The school district shall have the burden of proof and the burden of production, in accordance with N.J.S.A. 18A:46-1.1.

Once admitted into evidence, an expert report speaks for itself.  On direct examination expert testimony should be limited to highlighting critical aspects of the report; reading of the report into the record shall not be permitted.

## 8.   <u>EXHIBITS MARKED FOR IDENTIFICATION AND EVIDENCE:</u>

No exhibit will be marked for identification or introduced into evidence at the hearing unless a copy is provided to the judge and each other party.  All parties are to pre-mark exhibits for identification.  **A master list of documents shall be provided to me via hard copy.** If a party intends to introduce more than ten documents, they will be supplied in a three-ring binder, containing index separators with tabs and a table of contents.  These should

OAL DKT. NOS. EDS 06354-20

be presented on the first day of hearing.  A separate set of evidence binders shall be made available for the use of witnesses.  These requirements will be strictly enforced.

9.    **FACT AND EXPERT WITNESSES:**

**For Petitioner:**                                          **For Respondent:**
To be determined.                                        To be determined.

10.   **MOTIONS:**

Motions to exclude evidence or witnesses based on a failure to disclose documentary evidence and summaries of testimony intended to be introduced at the hearing shall be filed no later than five business days prior to the start of the hearing.  The judge shall exclude any evidence at hearing that has not been disclosed to that party at least five business days before the hearing, unless the judge determines that the evidence could not reasonably have been disclosed within that time.  See, N.J.A.C. 1:6A-10.1.

Motions for summary decision, if any, shall be filed no later than thirty days prior to the hearing.

All other motions, shall be filed no later than ten days prior to the start of the hearing.

August 11, 2020
DATE                                                        **JACOB S. GERTSMAN,** ALJ t/a

JSG/nd
cc: Clerk-OAL-T